James **SIMON**, Individually and as representative of a Class, etc., Plaintiff-Appellant,

v.

**MERRILL LYNCH, PIERCE, FENNER AND SMITH, INC.,** a Delaware corporation, Defendant-Appellee.

No. 72–2905.

United States Court of Appeals, Fifth Circuit.

July 10, 1973.

Rehearing and Rehearing En Banc Denied Oct. 30, 1973.

G. Lee Hart, Dallas, Tex., William H. Merrill, Detroit, Mich., A. Joe Fish, William A. McKenzie, Dallas, Tex., for plaintiff-appellant.

Frank Finn, Jr., Jerry L. Buchmeyer, Dallas, Tex., Brown, Wood, Fuller, Caldwell & Ivey, New York City, Erwin S. Simon, Detroit, Mich., Henry F. Minnerop, Richard Conway Casey, New York City, for defendant-appellee.

Before BELL, INGRAHAM and RONEY, Circuit Judges.

RONEY, Circuit Judge:

James Simon appeals from a judgment for defendant Merrill Lynch, Pierce,

Fenner and Smith, Inc., in a suit for damages resulting from alleged common law fraud and negligence and for non-disclosure violations of the Securities Exchange Act of 1934. 15 U.S.C.A. §§ 78j and 78o(c)(1), 17 C.F.R. § 240.10b–5. After a complicated procedural history, the District Court denied plaintiff's motions for joinder, intervention, and that the suit be maintained as a class action. At trial, the Court, sitting without a jury, concluded that Simon had failed to establish a claim against Merrill Lynch. We affirm.

The basis for Simon's individual suit and the purported class action is the purchase of common stock of Scientific Control Corporation (SCC), a Dallas computer firm, by Simon and some 6,000 others upon Merrill Lynch's alleged misrepresentations and omissions of material facts in its written and oral statements, advertisements, and acts. Plaintiff alleges that, in March 1969, Merrill Lynch was apprised of SCC's precarious financial condition, but the defendant continued recommending the stock, thereby creating an artificial market. In November, 1969, SCC filed a petition for reorganization under Chapter XI of the Bankruptcy Act, and the value of SCC common stock declined substantially.

Simon contends that his purchase of 1,900 shares of the stock during the period May through October, 1969, was based on these misrepresentations, and he claims to represent the class of individuals who also purchased the stock in reliance upon Merrill Lynch's misrepresentations. Although not argued in the trial court, he urges on appeal that Merrill Lynch was an "insider" of SCC and that Merrill Lynch made a market in SCC common stock without revealing that fact to all of its customers.

## I. *Class Action*

The District Court's denial of Simon's motion for an order that this action be maintained as a class action, Rule 23(b)(1), F.R.Civ.P., rested on its views that "questions of fact and law common to the members of the class [did] not predominate over questions of fact and law affecting only individual members," and that the use of the class action device in this action would not preclude a multiplicity of suits based on a common wrong. These determinations were based on the Court's findings that Simon had "unique" access to information regarding SCC through that company's board chairman, his personal friend, that there was no showing that the oral representations made to Simon by a Merrill Lynch salesman had been similarly made to other members of the purported class, and that plaintiff could not supply the required proof for the entire class on the issues of misrepresentation and omission.

Rule 23 permits a class action only when the Court finds that "the questions of law or fact common to the members of the class predominate over any question affecting only individual members . . . ." Rule 23(b)(3), F.R. Civ.P.

■ If there is any material variation in the representations made or in the degrees of reliance thereupon, a fraud case may be unsuited for treatment as a class action. *See* Rule 23, Advisory Committee's Official Note, 39 F. R.D. 98, 107 (1966). Thus, courts usually hold that an action based substantially, as here, on oral rather than written misrepresentations cannot be maintained as a class action. *See, e. g.,* Morris v. Burchard, 51 F.R.D. 530 (S. D.N.Y.1971); Moscarelli v. Stamm, 288 F.Supp. 453 (E.D.N.Y.1968); *See also* Comment, The Impact of Class Actions on Rule 10b–5, 38 U.Chi.L.Rev. 337, 342 (1971). Similarly, if the writings contain material variations, emanate from several sources, or do not actually reach the subject investors, they are no more valid a basis for a class action than dissimilar oral representations. *Cf.* Harris v. Palm Springs Alpine Estates, Inc., 329 F.2d 909 (9th Cir. 1964); Frankel v. Wyllie & Thornhill, Inc., 55 F.R.D. 330 (W.D.Va.1972); Dolgow v. Anderson, 43 F.R.D. 472 (E.D.N.Y.1968);

Richland v. Cheatham, 272 F.Supp. 148 (S.D.N.Y.1967).

■■■ Although Simon alleges that Merrill Lynch's misrepresentations were both oral and written, his testimony premised his reliance on the oral touting of SCC stock by a Merrill Lynch account executive. Even if plaintiff had established that the alleged misrepresentations were primarily written, a class action would not be appropriate unless he could prove the similarity of the writings. His failure to prove any standardized representations by Merrill Lynch bars a class action whether it is based on Rule 10b–5 or the state common law. Furthermore, the geographical dispersion of the alleged representations would bring into issue various state common law standards. With no single law governing the entire class, common issues of law cannot be shown to warrant Rule 23 treatment.

We recognize that the Rule 23(b)(3) suit has been one of the principal weapons against fraud in securities transactions, see Green v. Wolf Corp., 406 F.2d 291, 295–296 (2d Cir. 1968), cert. denied, 395 U.S. 977, 89 S.Ct. 2131, 23 L. Ed.2d 766 (1969); and that the Securities Exchange Commission has advocated its use in such cases, see Dolgow v. Anderson, supra; accord, Wolfson v. Solomon, 54 F.R.D. 584 (S.D.N.Y.1972). But the record before us—indicating no standardized communications, plaintiff's primary reliance on oral statements made directly to him and his personal access to, if not information about, SCC's financial condition—demonstrates no "common course of conduct," see Richland v. Cheatham, supra; or "common scheme," see Dolgow v. Anderson, supra, on the part of Merrill Lynch which would insure Simon's adequate representation of the purported class.

Plaintiff, in alleging that he was not afforded sufficient opportunity to support his capacity to represent the class, has overlooked the elaborate two-year history of this suit. Our reading of the District Court's Order indicates that the Court's discussion of the reasonableness of Simon's reliance and his access to inside information was properly directed to the commonality of issues between him and the purported class.

## II. Merits

The District Court found that Merrill Lynch's recommendations of SCC common stock were in no way "fraudulent or negligent or inaccurate in stating facts known by [the brokerage firm] about [SCC]," and that the evidence did not establish that Merrill Lynch was fraudulent or negligent in either its investigation of SCC or its representations about the Company. The Court specifically found that Simon "did not rely on [Merrill Lynch's representations] regarding these securities." The Court also found that Merrill Lynch did disclose to Simon, in the midst of his trading, its position as market maker in SCC common stock during the relevant period. Upon these findings, the Court held that Simon had failed to establish a claim against Merrill Lynch under the Securities Act or under common law fraud or negligence.

Simon has not met his burden under Rule 52(a), F.R.Civ.P., of establishing as "clearly erroneous" the trial court's findings. Nor has he convinced us of the merit of his contentions regarding (a) fraud or negligence, (b) defendant's disclosure of its role as a market maker in SCC common stock, and (c) Merrill Lynch's posture as an "insider."

### A. Fraud or Negligence

■■■ Simon contends that the District Court's decision turned on inappropriate standards of reliance and proximate cause. He reasons that, since this is allegedly a case of nondisclosure by an insider, the Court's finding that plaintiff did not rely on Merrill Lynch's representations is not dispositive.

Simon would have us assert, consequently, that reliance need not be proved in nondisclosure cases. He relies primarily on the standard established by the United States Supreme Court in Affiliated Ute Citizens of Utah v. United

States, 406 U.S. 128, 92 S.Ct. 1456, 31 L.Ed.2d 741 (1972):

Under the circumstances of this case, involving primarily a failure to disclose, positive proof of reliance is not a prerequisite to recovery. All that is necessary is that the facts withheld be material in the sense that a reasonable investor might have considered them important in the making of this decision. . . . This obligation to disclose and this withholding of a material fact establish the requisite element of causation in fact. Chasins v. Smith, Barney and Co., 438 F.2d, at 1172.

406 U.S. at 153–154, 92 S.Ct. at 1472. The Courts, in other cases, have pointed out that reliance, "a particularly difficult matter to . . . prove" regarding the nondisclosure of a fact, Mills v. Electric Auto-Lite Co., 396 U.S. 375, 382, 90 S.Ct. 616, 24 L.Ed.2d 593 (1970) (n. 5), is "an element of causation which plays little role in nondisclosure cases." Crane Co. v. Westinghouse Air Brake Co., 419 F.2d 787, 797 (2d Cir. 1969), cert. denied, 400 U.S. 822, 91 S. Ct. 41, 27 L.Ed.2d 50 (1970). See Chasins v. Smith, Barney & Co., 438 F.2d 1167 (2d Cir. 1970); 6 L. Loss, Securities Regulation 3876–80 (1969 Supp.).

Simon argues that, under the *Ute* standard, he was not required to establish his individual reliance on Merrill Lynch's representations. All that need be shown is that the nondisclosed information was national and that causation of the investor's injury be established by proof of an obligation to disclose and a withholding of a material fact.

We think the finding that plaintiff did not generally rely upon the broker for advice makes the principle asserted by Simon inapplicable here. Although *Ute* does state that a plaintiff need not specifically demonstrate reliance on particular omissions, that case did not involve, as here, a general lack of reliance by the plaintiffs on the defendants' representations. In *Ute*, concerning the management and distribution of the Indian tribe's assets, the Court acknowledged that the plaintiffs "considered these defendants to be familiar with the market for the shares of stock and relied upon them when they desired to sell their shares." 406 U.S. at 152, 92 S.Ct. at 1471. The Court made clear that "if [defendants] had functioned merely as a transfer agent, there would have been no duty of disclosure here." 406 U.S. at 152, 92 S.Ct. at 1471.

This reasoning is apparent in this Circuit's holdings that some element of general reliance by plaintiff, even in nondisclosure cases, is essential to a Rule 10b–5 action. Grumbles v. Times Herald Printing Co., 387 F.2d 593 (5th Cir. 1968), cert. denied, 390 U.S. 1028, 88 S.Ct. 1419, 20 L.Ed.2d 285; Clement A. Evans & Co. v. McAlpine, 434 F.2d 100 (5th Cir. 1970), cert. denied, sub nom. Clement A. Evans & Co. v. A. M. Kidder & Co., 402 U.S. 988, 91 S.Ct. 1660, 29 L.Ed.2d 153 (1971). In *Grumbles*, a Rule 10b–5 action alleging nondisclosure of a material fact in a securities transaction, this Court upheld the District Court's judgment for defendants on the basis that "[t]he jury [had] decided that the [plaintiffs] failed to prove the substance of their case of reliance and materiality of the withheld information," 387 F.2d at 593. In *Evans & Co.*, we made clear that

[P]laintiff's sophistication, expertise and business acumen in the financial community, his access to information and opportunity to detect the fraud are all relevant considerations in determining the exercise of reasonable diligence. [Citing, *inter alia*, Kohler v. Kohler, 319 F.2d 634 (7th Cir. 1963), a nondisclosure case].

434 F.2d at 104.

In the case at bar, the District Court found no evidence "that plaintiff followed [Merrill Lynch's] advice to his detriment," indicating that, unlike those who relied on the defendants in *Ute*, Simon made his own investment decisions and relied in no way on defendant's recommendations. The circuit's require-

ment of reasonable reliance, therefore, was not met.

Nor does *Chasins, supra,* provide him with support because the Second Circuit limited that opinion to the fact situation where the defendant "had strongly recommended sales of [plaintiff's] holdings and purchases of . . . stocks in which [defendant] was dealing as a principal" and the plaintiff relied upon defendant's recommendations of the purchase. 438 F.2d at 1172. The District Court's finding that Merrill Lynch informed Simon of its market-making by wire flash prior to his July 8 and October 23, 1969 purchases of SCC common stock both preclude his reliance on *Chasins* regarding these latter trades and impeach any assertion that he would not have made any purchases had he known of Merrill Lynch's activities.

### B. *Market Maker*

Simon challenges the District Court's finding that, "[w]hile Merrill Lynch did not affirmatively disclose to plaintiff it was making a market in [SCC] at the time of his first purchases on May 9, 1969, it did disclose this to plaintiff and all of its customers by way of a wire flash on or about June 9, 1969, although plaintiff testified he never received this notice." He argues that Merrill Lynch was obliged to disclose these activities at the outset of his trading in SCC common stock because of the potentially adverse interest represented by market-making. *See* Chasins v. Smith, Barney & Co., *supra.*

■ There is a conflict in the trial testimony regarding whether Simon was orally advised by his account executive at the time of his purchases that Merrill Lynch made a market in SCC common stock. The broker contended that, at the time of Simon's second purchase, he sent all of his customers, including Simon, a wire flash informing them of the Merrill Lynch market in SCC. Although Simon testified that he never received the wire flash or any other relevant materials from Merrill Lynch, the District Court credited the broker's tes-

timony that Simon, as record owner of the SCC shares, would have been sent the wire flash, the company's annual report, a proxy statement, and other notices pursuant to office practice. Simon has not established, consequently, that the trial court's findings on this point were clearly erroneous.

### C. *Inside Information*

Although plaintiff did not raise the "insider" issue at trial, the record is sufficient for us to determine that the argument is without merit.

■ Simon asserts that Merrill Lynch was an "insider" of SCC and failed to disclose "inside information" regarding the Company's adverse financial condition. This argument, however, is based solely on his allegation that the brokerage firm owned, as of September 10, 1969, 27.4% of the outstanding common stock of SCC. What plaintiff has failed to admit is that the uncontradicted evidence shows that Merrill Lynch, as a broker-dealer, was not the beneficial owner of the stock, but only held it in "street name" for the benefit of its customers. As a market maker, Merrill Lynch would have obtained those shares for the firm's trading account in order to maintain an orderly market and not for investment purposes.

Simon contends that Merrill Lynch received from SCC's chairman adverse inside information and failed to disclose this information. No support for this allegation can be found in the record. If such information had been communicated to Merrill Lynch, the District Court could not have concluded, as it did, that there was "no evidence that Merrill Lynch's opinions in 1969 were in any way fraudulent or negligent or inaccurate in stating facts known by it about [SCC]." The facts, therefore, do not sustain Simon's allegation.

Since the District Court found that Merrill Lynch did not purchase SCC stock for investment purposes, the firm's ownership of SCC stock is not within the purview of Section 16(b) of

the Securities Exchange Act, 15 U.S.C. A. § 78p, which requires certain categories of individuals, with particular relationships with the issuer of securities, to meet various reporting standards. Section 16(d), 15 U.S.C.A. § 78p(d), though, specifically exempts from these reporting requirements "any purchase and sale . . . of an equity security not then or theretofore held by him in an investment account, by a dealer in the ordinary course of his business and incident to the establishment or maintenance by him of a primary or secondary market . . . for such security." Thus, Merrill Lynch cannot be construed to be an "insider" of SCC as a matter of law.

Affirmed.