Dr. David **SIROTA** et al., Plaintiffs,

v.

**ECONO–CAR INTERNATIONAL, INC., et al., Defendants.**

**No. 72 Civ. 4899.**

United States District Court,
S. D. New York.

Jan. 15, 1974.

Kaplan, Kilsheimer & Foley, New York City, for plaintiffs; Robert N. Kaplan, Dermot G. Foley, New York City, of counsel.

Whitman & Ransom, New York City, for defendants Westinghouse Electric Corp. and Econo-Car International, Inc.; Norman G. Sade, John M. Hadlock, New York City, of counsel.

METZNER, District Judge:

Plaintiffs have moved for an order pursuant to Rule 23, Fed.R.Civ.P. declaring this suit a class action. Three of the plaintiffs owned shares of a merged company (see details below), and the fourth plaintiff purchased his shares after the merger.

The action was brought to redress alleged violations of the Securities Exchange Act of 1934 arising out of the issuance of an allegedly false and misleading proxy statement. The proxy statement was issued by Americar, Inc. (Americar) on October 9, 1970 in connection with its proposed merger into Westcar, Inc. (Westcar), a wholly owned subsidiary of the Westinghouse Electric Company (Westinghouse). (Westcar is now known as Econo-Car International, Inc. (Econo-Car).) Named as defendants are Econo-Car, Westinghouse and various former directors and officers of Americar. Counts 1–3 charge Westinghouse and Econo-Car with violations of Sections 14(a) and 10(b) of the 1934 Act. Count 4 alleges that the individual defendants were engaged in inside trading in violation of Section 10(b).

In the proxy statement Americar advised its shareholders of a special meeting of shareholders scheduled for October 20, 1970 to consider the merger into Econo-Car. The proxy statement revealed that under the merger agreement 16 per cent of the Westinghouse shares to be received by each Americar share-

holder would be held in an escrow account to indemnify Westinghouse and Econo-Car against certain liabilities referred to in the escrow agreement. These escrow shares were to be represented by Interim Certificates to be given to Americar shareholders evidencing their rights to receive shares of Westinghouse common stock upon termination of the escrow account.

After Americar's Board of Directors recommended approval of the merger, shareholder approval followed on October 20, 1970, and the merger became effective on October 30, 1970.

After the exchange of stock, an active market in the Interim Certificates developed. On October 29, 1971, two days before the deadline for claiming under the escrow agreement, Westinghouse publicly announced that it was making a claim against the escrow account. This claim was for an amount substantially in excess of the value of the escrow account, and included claims for (1) Restricted Liabiliities (as defined in the escrow agreement) of $1,932,000 that would have to be paid by Westinghouse on behalf of Americar, (2) uncollected receivables of $1,475,000, and (3) an income deficiency of $256,000. Due to Westinghouse's claims, the escrow agent delivered the escrow stock to Westinghouse pursuant to the agreement. Plaintiffs now claim their Interim Certificates are worthless.

In this action plaintiffs allege that the proxy statement did not adequately describe the reasons for the escrow account or apprise the Americar shareholders of the risks involved in the agreement with Westinghouse. The class plaintiffs seek to represent numbers about 1,500 and includes:

> "All persons who received, during the period October 30, 1970, to and including October 29, 1971, Interim Certificates representing common shares of Westinghouse Electric Corporation (issued at the time of the Americar-Westcar merger)."

Defendants Westinghouse and Econo-Car do not contest the appropriateness of class action treatment under Rule 23 as to the Americar shareholders who received Interim Certificates in connection with the merger of October 30, 1970. We agree. However, these defendants do oppose class action certification as to those persons who purchased Interim Certificates on the open market. Their opposition as to these post-merger purchasers is that individual questions of law or fact predominate over common questions. See Rule 23(b)(3).

Defendants maintain that because the Interim Certificates were being traded on the open market at substantially lower prices than Westinghouse common stock, the purchasers of these certificates were "probably" speculators who were willing to take advantage of the price spread and prepared to risk the escrow contingencies. It is claimed that as to each of these purchasers individual questions exist as to their reliance on the proxy statement, which predominate over questions common to the class.

In rejoinder, plaintiffs assert that because of the allegedly misleading proxy statement, the market which developed after the merger in the Interim Certificates was misled and defrauded into valuing these certificates at substantial prices. They trace the 10b–5 claims of these open market purchasers directly to the proxy statement since it was the only publicly issued document explaining the Interim Certificates.

■ Proof of reliance no longer appears to be a prerequisite to recovery in a 10(b) or 14(a) action involving nondisclosure. "All that is necessary is that the facts withheld be material in the sense that a reasonable investor might have considered them important in the making of this decision." Affiliated Ute Citizens v. United States, 406 U.S. 128, 153–154, 92 S.Ct. 1456, 1472, 31 L.Ed.2d 741 (1972); Mills v. Electric Auto-Lite Co., 396 U.S. 375, 384, 90 S. Ct. 616, 24 L.Ed.2d 593 (1970); Chris-

Craft Industries, Inc. v. Piper Aircraft Corp., 480 F.2d 341, 373 (2d Cir. 1973); Cohen v. Franchard Corp., 478 F.2d 115, 124, n. 12 (2d Cir. 1973). Even assuming that proof of reliance is required, however, variations in that element between holders of the Interim Certificates prior to and after the merger are not so substantial as to make individual questions of fact predominate over common questions. Mersay v. First Republic Corporation of America, 43 F.R.D. 465, 471 (S.D.N.Y.1968).

Simon v. Merrill Lynch, Pierce, Fenner and Smith, Inc., 482 F.2d 880, 882–883 (5th Cir. 1973), relied on by defendants is inapposite since class action status was denied because the suit was based substantially on oral rather than written misrepresentations. Here the misrepresentations all allegedly stem from a single proxy statement. Common questions of law and fact are more likely to predominate where a suit is based on a single written document containing the alleged misrepresentations and omissions. Korn v. Franchard Corp., 456 F.2d 1206 (2d Cir. 1972); Unicorn Field, Inc. v. Cannon Group, Inc., 60 F.R.D. 217, 221 (S.D.N.Y.1973).

We therefore conclude that common questions do predominate and that persons who purchased the Interim Certificates after the merger are properly entitled to class action treatment.

However, we do agree with defendants that the class be divided into two subclasses under Rule 23(c)(4)(B): the first embracing all Americar shareholders who received Interim Certificates as the result of the merger, and the second all open market purchasers. The basis for this subdivision is that there are substantial legal differences between the two groups.

■■ The shareholders of Americar who received the proxy statement prior to the merger do not have to prove scienter in order to establish their Section 14(a) claims. Mere negligence will suffice to invoke liability. Gerstle v.

Gamble-Skogmo, Inc., 478 F.2d 1281, 1300–1301, 1302 (2d Cir. 1973). However, in order to prevail on their 10(b) claims, the only ground available to open market purchasers, scienter must be proved. Lanza v. Drexel & Co., 479 F.2d 1277, 1304 (2d Cir. 1973) (en banc). The test for this culpability under Rule 10b–5 has most recently been stated as "proof of a willful or reckless disregard for the truth." Id.; see also, Republic Technology Fund, Inc. v. Lionel Corp., 483 F.2d 540 (2d Cir. 1973).

■ Defendants also object to the inclusion of persons who sold their Interim Certificates at any time prior to October 29, 1971, within the proposed classes. They argue that since the gravamen of the complaint is that the market in these Interim Certificates was overvalued because of the defendants' alleged misrepresentations and omissions, any sellers prior to the time Westinghouse made its claim against the escrow account actually benefited from the fraud and thus cannot have been harmed.

This presents only a question of damages. A person who sold his Certificates might still have been the victim of the defendants' misrepresentations or omissions if his purchase was related thereto. The fact that he sold the Certificates prior to their complete worthlessness only goes to reducing the amount of damages he might recover.

■ Defendants also urge that the definition of the classes be restricted to exclude all officers, directors and insiders of Americar since the complaint charges three of this group with trading on inside information to the detriment of the classes. It appears that such exclusion would be premature at this time. Innocent persons might be harmed by such action. The request is denied with leave to renew at the appropriate time. Rule 23(d).

■ Finally, defendants argue that a proof of claim form be appended to the notice which is sent to the classes. The

propriety of sending a proof of claim form with the notice is not settled in this circuit. *Compare,* Unicorn Field, Inc. v. The Cannon Group, Inc., *supra* (Bauman, J.); Korn v. Franchard, 50 F.R.D. 57 (S.D.N.Y.1970) (Mansfield, J.), *with* Ostroff v. Hemisphere Hotels Corp., 60 F.R.D. 459 (S.D.N.Y.1973) (Bonsal, J.); Pearlman v. Gennaro, CCH Sec.Reg.Rep. ¶ 94,006 (S.D.N.Y. May 31, 1973) (Cannella, J.). Most recently, the Manual for Complex Litigation, 1 Moore, Federal Practice, Pt. 1.45 at 46–48 (2d ed. 1973), has stated that a proof of claim form violates the opting-out provisions of Rule 23 and therefore should not be included with the notice sent to the members of the class. I find that the claim form should not be appended to the notice to be sent to the classes. *Cf.* Abulaban v. R. W. Pressprich & Co., Inc., 51 F.R.D. 496 (S.D.N.Y. 1971).

In accordance with the prevailing law in this circuit, plaintiffs must bear the cost of notice to the classes. Eisen v. Carlisle & Jacquelin, 479 F.2d 1005 (2d Cir.), cert. granted, 414 U.S. 908, 94 S.Ct. 235, 38 L.Ed.2d 146 (1973).

Settle order.