James L. SHORES, Jr., as Executor of the Estate of Clarence E. Bishop, Jr., etc., et al., Plaintiffs-Appellants

v.

Jerald H. SKLAR et al., Defendants-Appellees.

No. 77–2896.

United States Court of Appeals, Fifth Circuit.

Jan. 21, 1980.

---

W. Eugene Rutledge, Anniston, Ala., for plaintiffs-appellants.

George B. Azar, Montgomery, Ala., for Rakerd.

Frank M. Young, III, Meade Whitaker, Jr., Birmingham, Ala., for Cecil Lamberson & Jackson Municipal.

Hobart McWhorter, Jr., Sam Franklin, Birmingham, Ala., for Capell, Howard, Knabe & Cobbs.

Henry E. Simpson, Birmingham, Ala., for First Alabama Bank of Phenix City.

B. G. Minisman, Jr., Crawford S. McGivaren, Jr., Birmingham, Ala., for Asa G. Candler, V.

Before SIMPSON, CHARLES CLARK, and FRANK M. JOHNSON, Jr., Circuit Judges.

CHARLES CLARK, Circuit Judge:

Clarence E. Bishop, Jr., brought this action in the Northern District of Alabama on behalf of himself and the class of all purchasers of First Mortgage Revenue Bonds issued by the Industrial Development Board of the Town of Frisco City, Alabama, seeking to recover upon default on the bonds. After twice allowing Bishop to amend his complaint, the district court entered summary judgment for the defendants, holding that Bishop's failure to allege that he relied upon any of the defendants' misrepresentations or omissions was fatal to his claim. Bishop died during the pendency of the case and his executor appeals. We hold that the plaintiff's allegations state a claim of fraud so pervasive that the absence of reliance was not dispositive of the case. Because genuine issues of material fact remain to be tried, we reverse the judgment entered and remand the case for further proceedings.

The Cater Act, Ala.Code tit. 37, § 815 *et seq.*, authorizes the incorporation of an Industrial Development Board [Board] in a municipality in order to induce industry to locate in Alabama. *Id.* § 816. Such a board has the authority to issue tax-exempt bonds. *Id.* §§ 822, 825. With the proceeds of such an issue, the Board can build an industrial facility, which it may then lease to a manufacturing, industrial, or commercial enterprise. *Id.* § 822. The amount of the rental payments is calculated to amortize the interest and principal of the bonds and is ostensibly lower than that which could be obtained without tax-free financing.

The bonds are revenue bonds, not general obligation bonds of the municipality. They must be secured by a pledge of the revenues and receipts from the lease and may be further secured by a mortgage or deed of trust covering the project from which revenues are to be derived. *Id.* § 824. The municipality is in no event liable for the payment of any of the Board's obligations, *id.* § 826; interest and principal are payable solely from the lessee's rent payments. *Id.* § 823.

The bond issue in question began when J. C. Harrelson, president and sole shareholder of Alabama Supply and Equipment Company [ASECo], and Clarence Hamilton, president of Investors Associates of America, Inc., a Tennessee underwriter, decided to seek industrial development financing to locate a facility in Frisco City, Alabama. Hamilton retained Jerald H. Sklar, of the Memphis, Tennessee, law firm of Waring, Cox, James, Sklar & Allen, as bond counsel. Sklar instructed Investors Associates to conduct an investigation of ASECo and retained John Andrews, of Capell, Howard, Knabe & Cobbs, P.A., a Montgomery, Alabama, law firm, as bond co-counsel. Andrews saw to the incorporation of the Industrial Development Board of Frisco City and issued an opinion on the legality of the authorization and issuance of the bonds. Sklar drafted the lease, indenture of trust, mortgage, authorizing resolution, guarantee, and closing papers. He also drafted the Offering Circular, based on information furnished to him by the underwriter, the lessee company, and those associated with them. Part of the information Sklar incorporated into the Offering Circular was a financial statement prepared by George C. Rakerd, a certified public accountant.

Plaintiff alleges that the Rakerd financial statement contained material misrepresentations and omissions. He asserts, for example, that certain investment real estate, which was recorded as an asset having a value of $2,420,500, was property in which ASECo had no ownership interest at the time the financial statement was certified. Plaintiff alleges that Rakerd's certification of the financial statement as made in accordance with generally accepted auditing standards was either knowingly or recklessly false, for Rakerd made no independent inquiry. Plaintiff further alleges that these misrepresentations or omissions in the financial statement were included in the Offering Circular and further amplified therein. The financial statement also in-

cluded as assets certain receivables owed by J. C. Harrelson to ASECo, which, plaintiff alleges, were of little value because Harrelson was in default on at least one of the notes at the time of certification.

Investors Associates determined that it did not possess sufficient capital to underwrite the proposed issue and assigned the right to underwrite the issue to Jackson Municipals, Inc., a Tennessee underwriting firm headed by Cecil Lamberson. The Phenix National Bank (now the First Alabama Bank of Phenix City, N.A.) had been chosen to act as trustee of the bond proceeds. The bank was also to ensure that the lessee complied with the terms and conditions of the lease, one of which was that ASECo at all times have working capital in the amount of $400,000.00 or more. Plaintiff alleges that the bank knew or should have known that ASECo was in breach of that provision of its agreement from the inception of the lease.

The Industrial Development Board of Frisco City adopted the resolution authorizing the bond issue. The Board entered into an agreement with Coliseum Properties, Inc., to construct part of the facilities contemplated by the bond issue. Plaintiff alleges that Coliseum Properties, Inc., did no more than serve as a vehicle by which substantial parts of the proceeds of the issue were diverted and used for the benefit of others. In particular, plaintiff alleges that the controlling persons of the parent corporation of Coliseum Properties [the Candler defendants] made improper payments to ASECo and to Harrelson in exchange for the construction contract; moreover, Coliseum Properties and some of its officers were under indictment in several pending suits. None of this information was disclosed to the Board when it entered into its agreement with Coliseum Properties.[1]

Jackson Municipals purchased the entire issue in three increments and resold them to other dealers. Plaintiff Bishop purchased his bonds from Professional Securities, Inc., a Birmingham municipal securities dealer, not here made a defendant. Bishop did so solely on the basis of the oral representations of his broker that the tax-free bonds would be a good investment. He never saw the Offering Circular. After the plant had been constructed, the lessee ceased operation at the plant and defaulted in payment of rent under the lease on April 15, 1974. Although Harrelson had unconditionally guaranteed the performance of the lease by ASECo, he did not have sufficient assets to back up his guarantee. The Trustee Bank declared default in the lease. The bonds became worthless. Bishop then brought this action.

The initial complaint in this action raised claims under the Securities Act of 1933, 15 U.S.C. § 77a *et seq.,* and the Securities Exchange Act of 1934, 15 U.S.C. § 78a *et seq.,* and pled a pendant Alabama state-law fraud claim. As a result of the numerous motions, affidavits, and discovery documents that were filed, the court permitted the plaintiff to amend his complaint twice but dismissed all claims under the 1933 Act. After the plaintiff filed his second amended complaint, the defendants moved to dismiss for failure to state a claim because Bishop did not allege that he relied upon the Offering Circular. Bishop filed all complaints both individually and on behalf of the class of all purchasers of the bonds.

The complaint purports to state claims against the defendants in three counts. Count I attempts to state a cause of action for violation of § 10(b) of the 1934 Act and of Rule 10b–5 promulgated thereunder. In essence it charges that the bonds were sold by means of an Offering Circular that contained untrue statements of material fact and which omitted material facts that were necessary to make other statements made not false or misleading and that these misstatements and omissions appeared in the Offering Circular only as a result of the culpable behavior of the defendants. Count

---

1. Bishop named all of the parties mentioned above as defendants except J. C. Harrelson, who was murdered before the commencement of this action; John Andrews; and Coliseum Properties, Inc.

II essentially alleges that the defendants engaged in a conspiracy, scheme, or agreement to do those things complained of in Count I. Count III alleges that the same conduct is actionable under Alabama common-law fraud.

In *Simon v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 482 F.2d 880 (5th Cir. 1973), we stated that "some element of general reliance by plaintiff, even in nondisclosure cases, is essential to a Rule 10b–5 action." *Id.* at 884. The district court relied on this language to deny recovery to the plaintiff. Taking into consideration answers to interrogatories in which the plaintiff "affirmatively denied seeing or relying on the Offering Circular," the court concluded that no reliance was present and that there existed no genuine issue concerning the absence of reliance.

In *Rifkin v. Crow,* 574 F.2d 256 (5th Cir. 1978), decided after the district court's opinion, the same judge who wrote *Simon* explained that *Simon* was a fact case that hinged on the nature of the so-called "Ute presumption" established for nondisclosure cases. In *Affiliated Ute Citizens v. United States,* 406 U.S. 128, 92 S.Ct. 1456, 31 L.Ed.2d 741 (1972), the Supreme Court held that the plaintiffs' inability to prove reliance did not bar recovery. *Simon* pointed out that *Ute* did not do away with reliance as an element of a 10b–5 case, noting that *Ute* did not involve "a general lack of reliance by the plaintiffs on the defendants' representations." 482 F.2d at 884. *Rifkin* further clarified this circuit's construction of *Ute.* It held that *Ute* merely established a presumption that the plaintiff would have relied on material information which the defendant failed to disclose, a presumption *Simon* held to be rebuttable.

■ *Simon's* emphasis on reliance may have distracted the district court from the essential element of recovery, causation. Reliance is essential only if it plays a part

in causation. *Rifkin* illustrates that causation is the basis of liability: "*Simon's* 'general reliance' language simply requires there to be a causal link between defendant's violation and plaintiff's harm in order for plaintiff to recover." 574 F.2d at 261 n. 1.

■ In a nondisclosure case, if the defendant can show that the plaintiff's decision would not have been affected by disclosure of the material information, then the defendant played no part in causing those losses and cannot be held liable for them. Were plaintiff's claim here a run-of-the-mill nondisclosure case, the district court's disposition might have been correct.[2] If plaintiff claimed no more than that the inclusion of material information in the Offering Circular would have kept him from purchasing the bond, then his admission that he placed no reliance whatsoever upon the Offering Circular would bar his recovery. In such a case, as in *Simon,* the nondisclosure would simply not have caused his loss.

But plaintiff alleges much more than a misrepresentation or nondisclosure that influenced price. He alleges that the bonds could never have been marketed if any of the defendants had disclosed the material information. In this sense, the plaintiff's theory is very similar to the fraud-on-the-market theory that has developed in cases involving price-rigging in connection with the sale of stock. *See, e. g., Zweig v. Hearst Corp.,* 594 F.2d 1261 (9th Cir. 1979); *Blackie v. Barrack,* 524 F.2d 891 (9th Cir. 1975), *cert. denied,* 429 U.S. 816, 97 S.Ct. 57, 50 L.Ed.2d 75 (1976); *Schlick v. Penn-Dixie Cement Corp.,* 507 F.2d 374, 381 (2d Cir. 1974), *cert. denied,* 421 U.S. 976, 95 S.Ct. 1976, 44 L.Ed.2d 467 (1975).

■ The trial court, believing the fraud-on-the-market theory to be an "open-market" relaxation of the reliance requirement,

---

2. The defendants moved to dismiss under Fed. R.Civ.P. 12(b)(6) for failure to state a claim. Because the district court considered matters outside the pleadings, the motions to dismiss were treated as motions for summary judgment but without the rule-required notice to the parties. Fed.R.Civ.P. 12(b) & 56. *See, e. g., Underwood v. Hunter,* 604 F.2d 367 (5th Cir. 1979). Bishop urges the absence of notice as reversible error. In view of our disposition of the merits of the appeal, we need not decide this procedural issue.

held that Bishop could not recover because he purchased his bonds over the counter as part of the distribution of an initial issue and not in any secondary market or on a national securities exchange. The requirement of a secondary market is important to a price-rigging fraud-on-the-market case, for that theory relies on the market to employ all available information (including misrepresentations or as affected by material omissions) in setting the price of a stock.

█ Such a market is irrelevant here, however, for Bishop does not allege that the price at which he purchased the bonds was distorted by misrepresentations or omissions. He argues instead that the very issuance of the bonds was dependent on those misrepresentations and omissions. A secondary market would play no part in the defendants' ability to float the issue, even though it might determine the price at which the bond was subsequently traded.

What is important here are the procedures, whether statutory or traditional, by which a bond issue can successfully be floated. Just as the purchaser of a stock on the open market can expect the market to reflect all information about that stock, so, too, can the purchaser of a new bond issue expect these procedures—the underwriter's investigation and report, the accountant's certified financial statement, bond counsel's opinion letter, and the like—to have been faithfully performed. In a stock case, a fraud on the market would affect the price; here, the fraud asserted would affect whether the issue could ever go forward at all.

In a fraudulent scheme of the magnitude of that alleged, plaintiff's lack of reliance on the Offering Circular is irrelevant. In a more ordinary fraud case, lack of reliance would generally imply lack of causation. Here, however, causation is clearly present irrespective of plaintiff's reliance on the Offering Circular. The scheme to float the bond issue was the cause in fact of plaintiff's losses, for if the defendants had not engaged in the fraudulent behavior, the bond would never have been offered for sale, plaintiff could not have purchased it, and no loss would have resulted. Because plaintiff's allegations, if true, would support a finding that the defendants' misrepresentations and nondisclosure of material information acted to perpetrate a fraud by allowing to be offered for sale a bond issue that would otherwise not have succeeded, he is entitled to proceed beyond the pleading stage to attempt to prove his allegations.

We do not undertake to chart the entire course for the remanded cause from that point except to say briefly that ultimate liability may turn on other matters, such as whether defendants acted with requisite scienter and, if less than totally debilitating fraud can be proved, whether some material falsity that may have affected some of the bond's terms but would not have prevented its issuance would still require proof of reliance. All we say for this appeal is that plaintiff is entitled to attempt to prove the case he has alleged.

The district court also dismissed the plaintiff's claim for relief under Alabama common-law fraud. The authorities cited by the district court in its opinion did not purport to deal with the kind of situation present here but were traditional misrepresentation cases. Accordingly, the court should reconsider plaintiff's state-law claim, taking into account our discussion above and the facts adduced at trial. The court also ruled that this action could not be maintained as a class action because of lack of typicality, lack of adequate representation, and lack of a showing that common questions of fact would predominate. All three of these determinations, however, were premised on the belief that reliance on the Offering Circular was crucial to plaintiff's claim. On remand, the court must also reconsider the maintainability of this action as a class action.

REVERSED and REMANDED.