Robert YOUNG and David C. Distad

v.

**NATIONWIDE LIFE INSURANCE COMPANY, American Century Mutual Funds, Inc., American Century Investment Services, Inc., American Century Variable Portfolios, Inc., American Century Investment Management, Inc., and American Century Investment Management International, Ltd.**

No. Civ.A. G–97–628.

United States District Court,
S.D. Texas,
Galveston Division.

Dec. 2, 1998.

Gregory N. Jones, Franklin Cardwell & Jones, Houston, TX, for plaintiffs.

B. Daryl Bristow, Bristow Hackerman Wilson & Peterson, Houston, TX, Cynthia R. Levin Moulton, Bristow Hackerman Wilson & Peterson, Houston, TX, Charles C. Platt, LeBoeuf Lamb Greene et al., New York City, Peter K. Vigeland, LeBoeuf Lamb Greene & MacRae, New York City, for Nationwide Life Insurance Company, defendant.

Robin C. Gibbs, Kathy D. Patrick, Gibbs & Bruns, Houston, TX, James F. Moyle, James N. Benedict, Mark Holland, Rogers & Wells, New York City, for American Century Mutual Funds, Inc., American Century Investment Services, Inc., American Century Variable Portfolios, Inc., American Century Variable Portfolios, Inc., American Century Investment Management, Inc., Management, Inc., American Century Investment Management International, Ltd., defendants.

### ORDER DENYING PLAINTIFFS' MOTION TO STRIKE EXPERT REPORTS, GRANTING PLAINTIFFS' MOTION TO LIFT PAGE LIMIT FOR REPLY, AND DENYING PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

KENT, District Judge.

This is a class action in which the class member Plaintiffs assert violations of Rule 10b–5 of the 1934 Federal Securities Exchange Act, 15 U.S.C. § 78 and 17 C.F.R. § 240.10b–5. In addition, Plaintiffs assert various common law causes of action including breach of contract, fraud, and civil conspiracy. Now before the Court are Plaintiffs' Motion to Strike Undesignated Experts' Reports and Opinions and Motion to Lift Page Limit for Reply, and Plaintiffs' Motion for Class Certification and for Immediate Class Notification of Nationwide's Settlement with Putative Class Members. For the reasons set forth below, Plaintiffs' Motion to Strike is **DENIED**, the Motion to Lift Page Limit is **GRANTED**, and the Motion for Class Certification is **DENIED**.

### I. BACKGROUND

Plaintiffs Robert Young and David C. Distad are representatives of an alleged class of purchasers of variable life insurance policies from Defendant Nationwide Life Insurance Company ("Nationwide"). Through its "Best of America Life Planning Series," Nationwide offers variable policies which allow the policy owner to allocate net premiums and cash value to one or more "sub-accounts" of certain variable and fixed accounts. The assets allocated to the sub-account are then used to purchase shares of a designated underlying mutual fund. The variable account mutual fund options offered by Nationwide are managed by, *inter alia*, the following well known mutual fund investment advisors: Dreyfus Corp., Fidelity Management & Research Company, Nationwide Financial Services, Neuberger & Berman Management Inc., Oppenheimer Management Corp., Strong/Corneliuson Capital Management, Inc., Twentieth Century, and Van Eck Associates Corp. The variable account at issue here is "TCI Portfolios, Inc.," which includes the sub-accounts "TCI Growth," "TCI Balanced," and "TCI International." Nationwide advertises these accounts as a part of "the Twentieth Century Family of Mutual Funds," and all of the Twentieth Century funds are managed by the same investment advisor, Investors Research Corporation, now American Century Investments.[1]

The sub-accounts offered by Nationwide through its Best of America program are mutual funds that offer their shares only to insurance companies. Although the policy owners do not invest directly in the mutual fund, they can allocate their investment to a variable account, and choose the sub-accounts in which they want their premiums invested. The value of their investment is then dependent upon the performance of the particular insurance mutual fund, or "sub-

---

1. Although the names of the investment manager and the funds have changed from "Twentieth Century" to "American Century," the Court will use the former names in order to avoid confusion.

account," they choose. Specifically, the plaintiff policy owners were told by Nationwide:

> As a contract holder, you invest in the mutual funds offered in your life insurance contract. However, you do not buy shares of the mutual fund. Instead, the Account buys shares of the fund and you in turn purchase units of the Account.... The value of your contract can change based on the value of the units you own.

The crux of Plaintiffs' complaint arises from their allegations that the Defendants made material misrepresentations and/or omissions in connection with the marketing and sale of the variable contracts. Specifically, although Plaintiffs acknowledge that they knew they were not investing in publicly traded mutual funds, they claim that the Defendants represented the sub-accounts, or underlying mutual funds, to be "clones" or replicas of well known, publicly traded mutual funds with the same or similar names. Plaintiffs claim that it was their understanding that the "TCI Portfolios" were insurance funds which tracked the investments of the publicly traded "Twentieth Century" Funds. For instance, Plaintiffs claim that Defendants represented the TCI insurance funds "TCI Growth Fund" and "TCI International Fund" to be clones of the publicly traded Twentieth Century Funds with the names "Twentieth Century Growth Investors Fund" and "Twentieth Century International Fund," respectively.

Young, who purchased his policy on December 14, 1992, requested that 100% of his payments be allocated to TCI Growth. Distad purchased two policies on April 17, 1996, and requested that 20% of his payments on each of the policies be allocated to the "20th Century International" fund.[2] In November of 1996, Distad changed mutual fund options, allocating substantial portions of his investment to "Twentieth Cent Growth."[3] Plaintiffs then began tracking their investments, and noticed that the performance of their portfolios differed substantially from the performance of the publicly traded funds which they believed they had purchased. For instance, in 1996, the TCI Growth Fund owned by Plaintiffs incurred a loss of over 5%, while the Twentieth Century Growth Investors Fund posted a 15% increase. When Distad called Nationwide to inquire as to the differing results between the two funds, he was told that the Nationwide fund was a separate fund with different objectives than the public fund.

Plaintiffs brought this action on October 31, 1997. In their Fourth Amended Complaint, they allege the following causes of action: (1) violations of § 10(b)[4] of the Securities Act of 1934; (2) fraud; (3) civil conspiracy; and (4) breach of contract (against Nationwide only). For prosecution of these claims, Plaintiffs request that the Court certify a class of all persons who were owners of units in the TCI Growth sub-account between and including December 31, 1995, and May 1, 1998, where such units were purchased at any time from or through Defendant Nationwide.[5]

## II. MOTION TO STRIKE UNDESIGNATED EXPERT REPORTS AND TO LIFT PAGE LIMIT FOR REPLY

■ Before considering the class certification issue, the Court will dispense with housekeeping matters raised by Plaintiffs' Motion to Strike Undesignated Expert Reports and to Lift Page Limit for Reply. On June 29, 1998, this Court issued a Scheduling Order which allowed Plaintiffs until Au-

---

**2.** As stated in Distad's contracts. Nationwide actually allocated the payments to the "TCI International" fund, presuming this was Mr. Distad's intention.

**3.** According to Distad, he decided to make this change based on the performance data of the publicly traded "Twentieth Century Growth" fund, which he acquired by reading the Wall Street Journal, "primarily because of the paucity of timely printed returns results coming from Nationwide."

**4.** 15 U.S.C. § 78j(b); *see* 17 C.F.R. § 240.10b-5 ("Rule 10b-5").

**5.** Plaintiffs select May 1, 1998, as the cut-off date because Nationwide's "Best of America" Prospectus issued on that date states that the funds offered are not replicas of retail mutual funds. Plaintiffs allege this was the first public disclosure made by Defendants which arguably disclaimed that TCI Growth was a clone fund.

gust 21, 1998, to complete discovery on the issue of class certification. The Order also required Plaintiffs to file a Motion for Class Certification by August 28, 1998, Defendants to file Responses by October 9, 1998, and Plaintiffs to file a Reply (limited to four pages) by October 23, 1998. Plaintiffs complain because Nationwide and American Century failed to disclose two of their experts, Robert L. Klein (Nationwide) and Geoffrey H. Bobroff (American Century), prior to the filing of their Responses to Plaintiffs' Motion for Class Certification on October 9, 1998. This date was after the date set for the close of Plaintiffs' discovery on the class certification issue. Information gained from the experts was incorporated into Defendants' Responses to Plaintiffs' Motion for Class Certification. Because Plaintiffs received notice of these particular experts for the first time upon reading Defendants' Responses, they complain that they did not have an adequate opportunity to challenge these experts. As a result, they claim to have been unfairly prejudiced in their ability to conduct discovery on the class certification issue and to reply to Defendants. Plaintiffs have failed, however, to show that they have been unfairly prejudiced by the Defendants retention of two additional experts during the time allowed Defendants for supplemental discovery. Accordingly, Plaintiffs' Motion is **DENIED.** Additionally, if indeed Plaintiff suffered any minor prejudice, it is easily remedied by the Court's decision to **GRANT** Plaintiffs' Motion to Lift Page Limit for Reply.

### III. STANDARD FOR CLASS CERTIFICATION

The party seeking class certification has the burden of showing that the requirements for a class action have been met. See, e.g., Applewhite v. Reichhold Chem., Inc., 67 F.3d 571, 573 (5th Cir.1995); Zeidman v. J. Ray McDermott & Co., Inc., 651 F.2d 1030, 1038 (5th Cir.1981). Under Rule 23(a), the following four prerequisites must be met: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class. See, e.g., Applewhite, 67 F.3d at 573; Longden v. Sunderman, 123 F.R.D. 547, 550 (N.D.Tex.1988). In addition, Plaintiffs must satisfy one of the elements of Rule 23(b). Here, Plaintiffs seek to certify a class under Rule 23(b)(3), which requires that the Court find both that questions of law or fact common to the members of the class predominate over any questions affecting only individual members and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. See Applewhite, 67 F.3d at 573. District courts have wide discretion in deciding the issue of certification, and the standard for review is abuse of discretion. See id. at 573; Jenkins v. Raymark Indus., Inc., 782 F.2d 468, 471–72 (5th Cir.1986). However, a district court is required to conduct a rigorous analysis of the Rule 23 prerequisites before certifying a class. See General Tel. Co. v. Falcon, 457 U.S. 147, 161, 102 S.Ct. 2364, 2372, 72 L.Ed.2d 740 (1982); Castano v. American Tobacco Co., 84 F.3d 734, 740 (5th Cir.1996); Applewhite, 67 F.3d at 573.

In the instant case, Defendants contest only Plaintiffs' failure to satisfy the class certification requirements of predominance, typicality, and adequacy; numerosity, commonality, and efficiency are thus conceded. The Court is persuaded by Defendants' argument that Plaintiffs have not carried their burden of demonstrating that common questions of law and fact predominate over individual issues among putative class members; consequently, Plaintiffs' Motion for Class Certification is **DENIED,** and this Order will address only the determinative issue of predominance.

### IV. ANALYSIS

Plaintiffs argue that Defendants have intentionally engaged in a broad-ranging scheme to defraud investors. The scheme began with IRS Ruling 81–225 which determined that ownership of a retail mutual fund in a Variable Contract would eliminate any tax-deferral on the growth in the underlying mutual fund investments. As a result, Na-

tionwide's Variable Contract business was all but destroyed. Nationwide attempted to resurrect its Variable Contract business with its own proprietary, non-retail mutual funds ("no-name" funds), but sales were lackluster. Nationwide apparently determined that it needed brand-name recognition in order to revitalize sales. In order to provide investors with the tax benefit of a Variable Contract and the name-recognition of respected mutual funds, Nationwide, in conjunction with several well-respected mutual fund houses, created "clone" mutual funds. The clone funds were separate mutual funds sold only through insurances companies for the purpose of funding Variable Contracts. The funds were modeled after and named similarly to well-known retail mutual funds. From these beginnings Nationwide's "Best of America Variable Contract" product was born.

American Century joined Nationwide's new venture in 1987, and agreed to create its first insurance-only mutual fund, TCI Growth. It appears from the evidence that TCI–Growth was originally conceived of as a "clone" fund, but on advice from the SEC American Century instead developed TCI–Growth, without changing its name, as an independent fund. By 1993, Nationwide's Best of America product offered ten to twelve mutual fund options each of which—other than the Nationwide proprietary funds and apparently TCI Growth—were clones of corresponding mutual funds. The two other Twentieth Century insurance-only mutual funds—TCI International and TCI Balanced—were clones of retail Twentieth Century International and Twentieth Century Balanced. The three TCI fund options were grouped together as TCI–Portfolios and the Twentieth Century Oaktree logo, which represents the Twentieth Century retail mutual funds, was used in connection with TCI–Portfolios. Despite the foreseeable potential for misleading investors, Nationwide and American Century took no affirmative steps to disabuse potential investors and their investment advisors of the notion that TCI Growth was a clone of Twentieth Century Growth Investors. Indeed, even some of Defendants' employees apparently confused the funds which is demonstrated by a perfor-

mance update for TCI Growth, sent to brokers and dealers, that mistakenly referred to the fund as Twentieth Century Growth Fund. Confusion among investors became evident in 1996 when the Defendants began receiving complaints referring to TCI Growth's failure to track its much more successful namesake retail fund, but it was not until May 1997 that the name of TCI Growth was changed to VP Capital Appreciation.

 The Court is appalled by what appears on the undisputed facts to be an extensive and manipulative scheme to defraud investors. Furthermore, the Court is mindful of the fact that, absent class certification, Defendants' egregious behavior may go essentially unpunished because of the prohibitive expense of prosecuting small claims individually. Unfortunately, however, the Court finds that it cannot grant Plaintiffs the relief they request. Controlling precedent from the United States Court of Appeals for the Fifth Circuit ties the hands of this Court on the issue of class certification. As Defendants correctly point out, individual reliance is an essential element of Plaintiffs' claims. The disparate circumstances of the two named class representatives alone demonstrate that this element will vary substantially from Plaintiff to Plaintiff, thus precluding class certification for failure to satisfy the predominance requirement of Rule 23. The Court must, in this instance reluctantly, carry out its obligation to follow the Fifth Circuit precedent discussed below. Plaintiffs' Motion for Class Certification is accordingly **DENIED**.

To prevail on a 10b–5 claim Plaintiffs must prove that, in deciding to invest in TCI Growth, they relied on what defendants purportedly represented—that TCI Growth was a clone of the retail fund Twentieth Century Growth Investors and would track its performance. "Reliance is one of the cornerstones of a Rule 10b–5 claim." *Finkel v. Docutel/Olivetti Corp.*, 817 F.2d 356, 358 (5th Cir. 1987); *accord Lovelace v. Software Spectrum, Inc.*, 78 F.3d 1015, 1018 (5th Cir.1996). Additionally, reliance is an essential element of Plaintiffs' state law fraud claims. *See Castano v. American Tobacco Co.*, 84 F.3d 734, 743 (5th Cir.1996).

In *Castano*, decided just two years ago, the Fifth Circuit stated emphatically and unequivocally: "[a]ccording to both the advisory committee's notes to Rule 23(b)(3) and this court's decision in *Simon*, a fraud class action cannot be certified when individual reliance will be an issue." *Castano*, 84 F.3d at 745. The plaintiffs in *Castano* sought to certify a class of all nicotine dependent persons in the United States. The plaintiffs alleged that the defendants knew cigarette smoking was addictive, that they failed to inform cigarette smokers of this fact, and that they took actions to addict cigarette smokers. These allegations were "core liability issues" found by the district court to satisfy the predominance requirement. On this basis the district court certified the class, choosing to withhold judgment on the issue of whether the reliance element of the plaintiffs' claims was individualized enough to require separate trials for each plaintiff. The Fifth Circuit reversed the district court's decision granting class certification. The Court stated that the district court had erred in its attempt to avoid the holding of *Simon*, which prohibits class certification where individual reliance is at issue, by refusing to decide whether the reliance issue would require individual trials. *See Castano*, 84 F.3d at 745 (citing *Simon v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 482 F.2d 880 (5th Cir.1973)).

Furthermore, in *Simon*, which was an action based upon alleged securities fraud and is thus even more factually on point than *Castano*, the Fifth Circuit stated: "[i]f there is any material variation in the representations made or in the degrees of reliance thereupon, a fraud case may be unsuited for treatment as a class action ... [I]f the writings contain material variations, emanate from several sources, or do not actually reach the subject investors, they are no more valid a basis for a class action than dissimilar oral representations." *Simon*, 482 F.2d at 882 (citations omitted); *accord Shivangi v. Dean Witter Reynolds, Inc.*, 825 F.2d 885, 890 (5th Cir.1987). As Defendants point out, this is exactly the situation in the case at bar. In alleging that the Defendants made misrepresentations which misled the plaintiff class, Plaintiffs point to the similarity between the names of TCI–Growth and Twentieth Century Growth Investors Fund, the use of the Oaktree logo in conjunction with both funds, two fund updates sent to brokers and dealers in 1992 and 1993 which mistitled TCI–Growth as Twentieth Century Growth Fund, and the use of the term "separate accounts" (which Plaintiffs allege is understood by many in the investment community to mean "clone") in a TCI Growth prospectus. Plaintiffs allegation is that various combinations of these and other factors were relied upon by investors or their brokers to lead putative class members to the conclusion that TCI–Growth cloned Twentieth Century Growth Investors.

An examination of the experience of the two named class representatives demonstrates the potentially wide variety of individual circumstances which may have led potential investors to confuse the funds. In fact, the first proposed class representative, Robert Young, an associate professor of economics at the College of the Mainland, did not personally rely on any of the documents Plaintiffs allege was misleading. His decision to invest in TCI Growth grew primarily out of conversation with friends and colleagues at the college who recommended Nationwide and TCI Growth. He suggests he may also have heard of retail Twentieth Century Growth Investors Fund and confused the names. He could not specifically remember whether he had ever seen the Oaktree logo used in conjunction with Twentieth Century Growth Investors. Young met with the local Nationwide representative and received various documents pertaining to the "Best of America" annuities, but none of them were marketing materials Plaintiffs now argue contain misrepresentations. He also confirmed that his broker never said TCI Growth was a "clone fund" or that it would clone or track the performance of Growth Investors Fund. Indeed, he had never even heard of the term clone in connection with mutual funds and was not aware of any industry practice of cloning funds.

The second proposed class representative, David Distad, is a chartered financial analyst who works as a consultant in financial and security analysis. His *curriculum vitae* in-

cludes a Ph.D. in finance from Michigan State University and positions as a stockbroker, portfolio manager, professor of investment and finance at several distinguished California universities, chief financial officer of a hotel management company, and financial consultant. He is a sophisticated investor familiar with the concept of "cloning" mutual funds. He believed TCI Growth would clone Twentieth Century Growth Investors Fund because the names, addresses, and logos of the two funds were similar and because the investment objective of TCI Growth was the same as the one he recalled reading several years earlier in the Twentieth Century Growth Investors Fund prospectus. He admits that he did not receive nor rely upon any of the documents that his attorneys now argue misrepresented that TCI Growth would clone Twentieth Century Growth Investors Fund.

In essence, the named Plaintiffs' assumptions that TCI Growth would clone Twentieth Century Growth Investors Fund was premised upon circumstances unique to each of them. Furthermore, the results of a survey conducted at Nationwide's behest by an independent market research expert indicate that reliance would be a significant issue classwide. The survey included approximately 300 customers randomly selected from among the approximately 50,0000 holders of either the variable annuity contract or variable life policy at issue, who had invested in TCI Growth prior to the date Plaintiffs filed suit. The survey indicated that less than half of the investors had ever heard of Twentieth Century Growth Investors and that less than one percent of the investors chose TCI Growth because they thought it would track the performance or have the same return as Twentieth Century Growth Investors. Only seven percent had heard of cloning in connection with the insurance or mutual fund industry and only eleven percent had heard of something called "separate accounts" in connection with the insurance or mutual fund industry. While these statistics and the individualized circumstances of the named Plaintiffs do not dispel Plaintiffs' allegations that Defendants' practices were misleading (and the Court recognizes that 1% of 82,000 is no small number of potentially defrauded investors), they do indicate that reliance would be a key issue likely necessitating individual trials.

Plaintiffs' arguments in favor of predominance fail, as they must on the facts of this case. In their Motion for Class Certification, Plaintiffs argue that the facts alleged show common issues predominate because predominance is a "relatively easy standard" to meet and thus, "without a doubt," they have alleged facts which meet it. In reaching this conclusion, they rely primarily upon the language of *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 117 S.Ct. 2231, 2250, 138 L.Ed.2d 689 (1997), wherein the United States Supreme Court stated "predominance is a test readily met in *certain cases* alleging consumer or securities fraud or violations of antitrust laws." For at least two reasons, this language cannot provide the necessary support for class certification in this case. First, the language is mere dictum in a lengthy opinion addressing certification in a mass tort case. Second, the language is qualified by the words "certain cases," which Plaintiffs fail to address and which most likely refers to securities fraud cases based primarily upon a misleading prospectus.

Plaintiffs next cite the *Castano* decision for the proposition that predominance is a "relatively easy standard" to meet. This is quite surprising in light of the *Castano* Court's nineteen page opinion, discussed above, which was primarily addressed to reversing the district court on its finding of predominance. *See Castano v. American Tobacco Co.*, 84 F.3d at 743 (5th Cir.1996). While the Court is well aware and very sympathetic to the fact that securities fraud is a serious matter which can cause great harm to investors who may, for example, lose their life savings, the core liability facts alleged in the *Castano* case were far more egregious than those alleged by the instant Plaintiffs and the consequences of the defendants' conduct far more severe and devastating; nevertheless, the Fifth Circuit reversed class certification on the predominance issue because of the essentialness of an individualized inquiry into reliance on the part of each plaintiff. In this case, Plaintiffs' single paragraph in its Motion for Class Certification addressing the

issue of predominance cannot overcome this glaring precedent.

In their Reply to Defendants' Response, Plaintiffs futilely attempt to avoid the holding of *Castano* and *Simon.* They point to the holding of *Affiliated Ute Citizens of Utah v. United States,* 406 U.S. 128, 153–54, 92 S.Ct. 1456, 1472, 31 L.Ed.2d 741 (1972), where the United States Supreme Court stated that when a Rule 10b–5 claim is based on omissions to disclose, rather than misrepresentations, proof of reliance is not necessary once the materiality of the omissions is shown. Plaintiffs attempt to fall within the "omission case" category by arguing that the crux of their complaint is not Defendants' misrepresentations but rather Defendants' omission of statements which would clarify any confusion between the funds. This argument cannot prevail, however, because such a circular argument would result in every case of misrepresentation becoming a case of omission as a result of the defendant's failure to correct a misrepresentation. In the instant case, it is from the alleged misrepresentations of the Defendants that any duty of disclosure arises. Plaintiffs implicitly support this conclusion with the allegation made in the opening statement of their Motion that Defendants "represented [TCI Growth] was one thing, but [it] was, in reality, quite another."

■ Plaintiffs also urge, without supporting argument, that Defendants committed a "fraud on the market," and thus reliance should be presumed. Under a fraud-on-the-market theory, an investor who buys or sells stock at the price set by the market does so in reliance upon the integrity of that price. *Basic, Inc. v. Levinson,* 485 U.S. 224, 247, 108 S.Ct. 978, 991–92, 99 L.Ed.2d 194 (1988). In fraud-on-the-market claims brought under Rule 10b–5, a rebuttable presumption of reliance is permissible once materiality is shown. *See, e.g., Abell v. Potomac Ins. Co.,* 858 F.2d 1104, 1119 (5th Cir.1988), *vacated sub nom. on other grounds, Fryar v. Abell,* 492 U.S. 914, 109 S.Ct. 3236, 106 L.Ed.2d 584 (1989). The Court agrees with Defendants that fraud-on-the-market has not been properly pled as it has been raised for the first time in Plaintiffs' Reply and without supporting analysis. Furthermore, fraud-on-the-market does not apply here because the share price of a mutual fund is not affected by alleged misrepresentations or omissions. The share price of a mutual fund is determined by the value of all the underlying securities it holds at a given time, and the fund price fluctuates with the price of those underlying securities. Plaintiffs cannot therefore claim that they relied upon an improperly inflated price that resulted from Defendants' misrepresentations.

■ The same reasoning applicable to plaintiffs federal and common law fraud claims applies to preclude certification on the breach of contract issue. To prove liability, Plaintiffs must show that Nationwide somehow breached extra-contractual promises made orally by Nationwide agents or arising from some common interpretation of Nationwide's materials. This theory would also require a particularized inquiry thus rendering the claim unsuitable for class treatment.

Plaintiffs last ditch effort to save its request for class certification by citing *Longden v. Sunderman,* 123 F.R.D. 547, 554–55 (N.D.Tex.1988), cannot prevail. The *Longden* Court opined that an inquiry into whether a plaintiff can establish the "fraud on the market" presumption for reliance at the class certification stage requires a court to prematurely consider the merits of the underlying action. *Castano* has since superseded that opinion and made it clear that an inquiry into the issue of reliance is not only ripe for consideration at the class certification stage, but it is in fact required in cases of alleged fraud. *See Castano v. American Tobacco Co.,* 84 F.3d 734 (5th Cir.1996).

### V. CONCLUSION

For the reasons set forth above, Plaintiffs Motion for Class Certification is **DENIED.** Plaintiffs' Motion to Strike Undesignated Expert Reports is also **DENIED,** and Plaintiffs' concurrent Motion to Lift Page Limit for Reply is **GRANTED.** The parties are **ORDERED** to file no further pleadings before this Court on the issue of Class Certification, particularly including motions to reconsider and the like, unless supported by *compelling* new evidence not available at the time of

submission of the instant pleadings. All further relief shall be sought in the United States Court of Appeals for the Fifth Circuit as may be appropriate. Furthermore, the Court will entertain no further discussion on the matter of class certification at the supplemental status conference set for December 4, 1998. The briefs and supporting documentation submitted by Plaintiffs and Defendants, which numbered in the hundreds of pages, more than adequately addressed the issue. All parties should prepare a proposed discovery and trial schedule to be discussed at the status conference. The Court strongly urges the parties to earnestly consider possibilities for settlement of these claims.

**IT IS SO ORDERED.**