619 F.2d 192
 Fed. Sec. L. Rep. P 97,344
Harry LEWIS, Alfred B. Reiss, Carola Gruen, as Executrix of
the estate of her late husband, Theodore Gruen,
Ira Barmak and Colonial Securities
Corporation, Plaintiffs-Appellants,
v.
Harold W. McGRAW, Jr., John L. McGraw, Daniel F. Crowley,
Peter O. Lawson-Johnston, Kay K. Mazuy, William J. McGill,
Gordon W. McKinley, Alan J. Pifer, Louis Putze, Howard S.
Tuthill, James E. Webb, Vernon R. Alden, George R. Webster
and McGraw-Hill, Inc., Defendants-Appellees.
 Nos. 953, 1101, Dockets 79-7883, 80-7203.
 United States Court of Appeals,
Second Circuit.
 Argued March 26, 1980.
Decided April 3, 1980.
 
 Stuart D. Wechsler, New York City (Robert I. Harwood, Mordecai Rosenfeld, A. Arnold Gershon, New York City, of counsel), for plaintiffs-appellants.
 Herbert M. Wachtell, New York City (Douglas S. Liebhafsky, Michael W. Schwartz, Theodore N. Mirvis, New York City, of counsel), for defendants-appellees.
 Before KAUFMAN, Chief Judge, MESKILL, Circuit Judge, and BRIEANT, District Judge.*
 PER CURIAM:
 
 
 1
 The instant action is a consolidation of five similar lawsuits brought on behalf of McGraw-Hill, Inc. stockholders, alleging that McGraw-Hill and its directors made false statements of material facts in response to two proposals of the American Express Company for the acquisition of substantial amounts of McGraw-Hill stock. The issue before us is whether shareholders may maintain a cause of action for damages under the Williams Act, 15 U.S.C. § 78n(e),[1] where they concede that no tender offer has been made to them. We conclude that they may not.
 
 
 2
 * On January 8, 1979, American Express proposed to McGraw-Hill what plaintiff describes as a "friendly business combination" of the two companies through payment by American Express of $34 in cash for each McGraw-Hill share. Alternatively, American Express indicated its willingness to acquire 49% of McGraw-Hill's shares for cash or a combination of cash and securities. McGraw-Hill common stock was trading at $26 per share immediately prior to the announcement. On January 15, 1979, McGraw-Hill announced that its Board of Directors had rejected the proposal and made public a letter to American Express characterizing the offer as "reckless," "illegal," and "improper." The following day, American Express filed Schedule 14D-1 with the Securities and Exchange Commission concerning its intention to make a cash tender offer for any and all of McGraw-Hill's stock.
 
 
 3
 The proposed offer was never made, however, for on January 29, American Express retracted its earlier announcement, and in its place submitted a new proposal to the McGraw-Hill board. This offer, at a price of $40 per share, would not become effective unless McGraw-Hill's incumbent management agreed not to oppose it by "propaganda, lobbying, or litigation." The offer was rejected by the McGraw-Hill board two days later, and expired, by its own terms, on March 1.
 
 
 4
 Plaintiffs' consolidated, amended complaint charges that:
 
 
 5
 Defendants announced publicly that the tender offer price of $40 per share was inadequate, although they knew that the price . . . was fair
 
 
 6
 Defendants, in resisting the AMEXCO (American Express Company) tender offer (sic ), challenged the integrity and honesty of AMEXCO (by indicating that AMEXCO had illegally complied with the Arab boycott), publicly challenged the legality of the tender offer (by indicating that the federal Bank Holding Company (Act) may preclude the tender offer), and publicly stated that the tender offer somehow threatened freedom of expression under the First Amendment of the Constitution (by stating that since the McGraw-Hill (sic ) was engaged in publishing, its independence would be smothered by a large financial institution such as AMEXCO).
 
 
 7
 These statements, as well as McGraw-Hill's characterization of the initial proposal as "reckless," "illegal," and "improper," are alleged to be false, as evidenced by the fact that, some months earlier, McGraw-Hill had advised American Express that it considered it to be a proper and desirable merger partner.
 
 
 8
 Plaintiffs concede that no tender offer ever took place that no McGraw-Hill shareholder was ever in a position to offer his shares to American Express at a stated price. The $34 proposal was withdrawn before it became effective, and was replaced with a $40 proposal that could have ripened into an offer only upon the acquiescence of the McGraw-Hill board. Nonetheless, plaintiffs claim, "had defendants provided . . . shareholders and the public with complete and truthful information about AMEXCO and its proposed tender offer (i. e. that $40 per share was a fair price, and that AMEXCO was a company with which defendants themselves had wanted to merge), the AMEXCO tender offer would have been consummated." Accordingly, they each seek damages from the company and its directors for the difference between the $40 proposed tender price, and the $25 price to which the stock returned after the expiration of the American Express proposal.
 
 
 9
 Judge Motley dismissed the consolidated amended complaint pursuant to Fed.R.Civ.P. 12, noting that "plaintiffs fail to allege that McGraw-Hill stockholders, or anyone else for that matter, in fact relied upon the alleged misrepresentations or omissions. While plaintiffs do allege deception on the part of defendants, plaintiffs do not allege that anyone was deceived or that anyone acted in reliance upon the alleged deception to their detriment." Having found plaintiffs' federal claim critically insufficient, the district court dismissed plaintiffs' pendent state claims for want of jurisdiction.II
 
 
 10
 The complaint was properly dismissed. Section 14(e) of the Williams Act, 15 U.S.C. § 78n(e), has as its "sole purpose" the "protection of investors who are confronted with a tender offer." Piper v. Chris-Craft Industries, Inc., 430 U.S. 1, 35, 97 S.Ct. 926, 946, 51 L.Ed.2d 124 (1977). It is designed "to ensure that (investors) will not be required to respond (to a tender offer) without adequate information." Rondeau v. Mosinee Paper Corp., 422 U.S. 49, 58, 95 S.Ct. 2069, 2076, 45 L.Ed.2d 12 (1975). Accordingly, one element of a cause of action under § 14(e) is a showing "that there was misrepresentation upon which the target corporation shareholders relied." Chris-Craft Industries, Inc. v. Piper Aircraft Corp., 480 F.2d 341 (2d Cir.), cert. denied, 414 U.S. 910, 94 S.Ct. 231, 38 L.Ed.2d 148 (1973) (emphasis supplied).[2] In the instant case, the target's shareholders simply could not have relied upon McGraw-Hill's statements, whether true or false, since they were never given an opportunity to tender their shares.
 
 
 11
 Plaintiffs do not contest this indisputable fact, but rather rest upon cases holding that reliance may sometimes be presumed from a showing of materiality. Mills v. Electric Auto-Lite Co., 396 U.S. 375, 90 S.Ct. 616, 24 L.Ed.2d 593 (1970); Affiliated Ute Citizens v. United States, 406 U.S. 128, 92 S.Ct. 1456, 31 L.Ed.2d 741 (1972). These cases, however, in presuming reliance, did not abolish it as an element of the cause of action. Rather, they held that in cases in which reliance is possible, and even likely, but is unduly burdensome to prove, the resulting doubt would be resolved in favor of the class the statute was designed to protect. Mills v. Electric Auto-Lite Co., supra, 396 U.S. at 385, 90 S.Ct. at 622. We therefore presume reliance only "where it is logical" to do so. Chris-Craft Industries, Inc. v. Piper Aircraft Corp., supra, 480 F.2d at 375. Here, where no reliance was possible under any imaginable set of facts, such a presumption would be illogical in the extreme.
 
 
 12
 We note in closing that our holding today does not place statements made on the eve of a tender offer by target or tendering companies wholly outside the scope of the Williams Act. On the contrary, where the offer ultimately becomes effective, and reliance can be demonstrated or presumed, such statements may well be made "in connection with a tender offer" as required by § 14(e). Otherwise, either party would be free to disseminate misinformation up to the effective date of the tender offer, thus defeating in substantial part the very purpose of the Act informed decisionmaking by shareholders. Injunctive relief, moreover, may be available to restrain or correct misleading statements made during the period preceding a tender offer where it appears that such an offer is likely, and that reliance upon the statements at issue is probable under the circumstances. Applied Digital Data Systems, Inc. v. Milgo Electronic Corp., 425 F.Supp. 1145, 1154-55 (S.D.N.Y.1977) (Weinfeld, J.). Finally, we must bear in mind that many of the wrongs alleged in this complaint may be recast as state law claims for breach of the fiduciary duties owed to shareholders by directors. See Santa Fe Industries, Inc. v. Green, 430 U.S. 462, 97 S.Ct. 1292, 51 L.Ed.2d 480 (1977). Indeed, we note that several plaintiffs have commenced state court actions arising out of the abortive transactions at issue here. In this case, however, since American Express never made its proposed offer to the shareholders of McGraw-Hill, plaintiffs cannot state a cause of action for alleged misstatements under the Williams Act.
 
 
 
 *
 Of the United States District Court for the Southern District of New York, sitting by designation
 
 
 [1]
 This section provides:
 It shall be unlawful for any person to make any untrue statement of a material fact or omit to state any material fact necessary in order to make the statements made, in light of the circumstances under which they are made, not misleading, or to engage in any fraudulent, deceptive, or manipulative acts or practices, in connection with any tender offer or request or invitation for tenders, or any solicitation of security holders in opposition to or in favor of any such offer, request, or invitation.
 
 
 [2]
 We note that the element of reliance has been held "irrelevant" to a cause of action under Rule 10b-5, where material misstatements can be shown to have caused the issuance of securities which, in turn, resulted in losses to plaintiff purchasers. Shores v. Sklar, 610 F.2d 235 (5th Cir. 1980). In Shores, plaintiffs could plausibly claim that if defendants had disclosed the truth concerning the financial condition of the issuer, the bond issue in question would never have been marketed. In the case at bar, by contrast, plaintiffs must contend that but for the alleged misstatements and omissions on the part of defendants, American Express would have proceeded with a hostile tender offer, over the opposition of McGraw-Hill. Such a scenario stretches the principle of causation into the realm of mere speculation, for it depends upon proof of an offer that, for all that appears here, American Express never even contemplated