Fannye MARKEL, individually, and in the name and on Behalf of Markel Electric Products, Inc., and all other similarly situated shareholders thereof; and Markel Heater Corporation, Plaintiffs,

v.

SCOVILL MANUFACTURING COMPANY, a corporation; Markel Electric Products, Inc., a corporation; David Markel, Lester M. Markel, Robert H. Jacobson, F.E. Warner, Walter R. Bush, John Washburn, James Rankin, Leonard F. Leganza, John Doe, Richard Roe, being co-conspirators whose identity is presently unknown, Defendants.

CIV–78–269C.

United States District Court,
W.D. New York.

April 7, 1987.

Raichle, Banning, Weiss & Halpern (Arnold Weiss, of counsel), Buffalo, N.Y., for plaintiffs.

Rogers & Wells (James Ringer, of counsel), New York City, and Moot & Sprague (Richard E. Moot, of counsel), Buffalo, N.Y., for defendants.

CURTIN, Chief Judge.

This action is brought pursuant to the Securities Exchange Act of 1934 (15 U.S.C. §§ 78a *et seq.*), the Sherman Act (15 U.S.C. §§ 1 *et seq.*), and the Clayton Act (15 U.S.C. §§ 12 *et seq.*). There are also pendent state law claims. Pending is a motion by defendants Scovill Manufacturing Company, James Rankin, John Washburn and Leonard F. Leganza, by their attorney, Richard E. Moot of Moot & Sprague. These defendants have moved for dismissal for failure to prosecute or, in the alternative, summary judgment, and sanctions pursuant to Federal Rules of Civil Procedure, Rule 11, and Section 9(c) of the Securities Exchange Act of 1934. Defendants Markel Electric Products, Inc., David Markel, Lester M. Markel, Robert H. Jacobson, F.E. Warner and Walter R. Bush, by their attorney, James M. Ringer of Rogers and Wells, join in these motions.

## History and Current Status

Before addressing these motions, a brief history of the case is in order. Markel Electric Products, Inc. was a local, family-owned and operated company for many years. Most of the shareholders were related through blood or marriage. The company manufactured built-in and portable electric resistance heating units for homes and businesses.

In early April of 1978, the shareholders of Markel Electric Products, Inc., with the exception of plaintiff Fannye Markel, her children, and a few others, executed a purchase agreement to sell their stock to Scovill Manufacturing Company. The selling shareholders, including Morris Markel, Fannye Markel's husband, owned more than 95% of the stock.

On or about April 24, 1978, Morris Markel demanded a return of the stock held in his name. The stock was returned to him. On May 22, 1978, 84% of the issued and outstanding shares of Markel Electric were sold to Scovill (*see* affidavit of David Markel, Item 7).

Plaintiffs filed this action in May of 1978. They sought a preliminary injunction enjoining defendants from accepting any tender offers for Markel Electric Stock, from taking control over shares which had been tendered, and ordering defendants to divest themselves of those shares. After an evidentiary hearing, this court denied their application. Order of June 5, 1978, Item 41.

In May of 1979, defendants sought and obtained a preliminary injunction enjoining plaintiffs and the Markel Heater Corp. from using the trade name "Markel." Item 98, 471 F.Supp. 1244 (W.D.N.Y., 1979). That decision was affirmed by the Second Circuit. 610 F.2d 807 (2d Cir.1979).

On June 20, 1980, Morris Markel and the Morris Markel Trust settled the case and a stipulation of discontinuance was filed. Fannye Markel is the only remaining named individual plaintiff. One of Mrs. Markel's sons, William, settled with the Markel Trust. Apparently, her other children continue to hold their shares. Abraham Weinberg, who had declined to sell his

shares at the time of the Scovill purchase (Item 7), has never appeared in this action.[1] The remaining shareholder plaintiffs hold less than 1.5 percent of the original Markel Electronics stock (Item 138).

Markel Heater Corp. is a local company, headed in part by plaintiff Fannye Markel. According to Mrs. Markel, it was formed in the weeks after the purchase agreement was signed and was incorporated days before the sale of stock was consummated. She stated that Markel Heater was formed to acquire the assets and stock of Markel Electric Products Inc. (*see* Item 75, ¶¶ 11–13). Once the sale to Scovill was completed, Markel Heater entered into competition with Markel Electric.[2]

### Motion to Dismiss for Failure to Prosecute

■ At the time of their motion for summary judgment, defendants also moved to dismiss for failure to prosecute (Item 143). As defendants point out, very little activity occurred in this case from mid–1980 to until December of 1983. However, dismissal for failure to prosecute is a harsh remedy. It is particularly appropriate in instances of a willful failure to prosecute, such as when a plaintiff fails to complete discovery or disobeys court orders. *Lyell Theatre Corp. v. Loews Corp.*, 91 F.R.D. 97, 99 (W.D.N.Y.1981), *aff'd*, 682 F.2d 37 (2d Cir.1982).

■ In this case, plaintiffs were involved in a related action in state court. It was hoped that resolution of the State proceeding would effect a settlement here (*see* Item #137). On July 15, 1986, counsel for defendants advised the court that the appraisal proceedings in state court had concluded (Item 152). The decision was rendered in plaintiffs' appraisal proceeding on June 30, 1986. A judge of the New York Supreme Court, County of Erie, found that the negotiations between Markel Electric Products, Inc., and the Scovill Manufacturing Company were conducted at arm's length and that previous attempts to sell the company support the conclusion that $9,680,000 was an adequate representation of its market value (*see* Item 152). The decision did not change the positions of the parties, and the motion for summary judgment and sanctions was again taken under consideration.

Although I believe plaintiffs in this action certainly should have pursued this case more vigorously, I decline to dismiss for this reason.

### Recusal

There has been no motion for recusal in this action. Counsel for plaintiffs raised the issue in letter form only, initially in a letter dated November 21, 1985 (Item 155; *see also* Items 156 and 158). At that time, due to the large number of cases on my docket, defendants' motion for summary judgment and dismissal had been under consideration for some time. A decision was planned to be filed by the end of the calendar year. I met informally with counsel and decided (despite defendants' opposition) to hold decision on defendants' motion for summary judgment and dismissal pending further settlement negotiations and the possible commencement of the companion case in state court. At plaintiffs' suggestion, any recusal issue was also held.

Settlement efforts failed, and trial on the state appraisal action was underway in state court. On February 11, 1986, I wrote to counsel for plaintiffs to ask for plaintiffs' "final word" on the recusal issue (*see* Item 149, Exhibit B). Counsel for plaintiffs again responded with a letter, dated February 28, 1986, in which he noted that plaintiff Fannye Markel continues to request recusal (Item 160). In that letter, counsel offered to make a formal motion if directed to do so by the court.

---

1. According to a footnote in defendants' brief, Abraham Weinberg sold his shares in January of 1979 (Item 144, n. 4). However, there is no citation to any point in the record to confirm this.

2. The court notes that the status of Markel Heater Corporation as a plaintiff in this case is uncertain, since defendants allege, and plaintiffs do not dispute, that the corporation was paid approximately $200,000 in connection with the Morris Markel settlement. However, there is no stipulation of discontinuance in the file.

On March 11, 1986, Richard E. Moot, on behalf of defendants, filed a declaration and brief in opposition to my recusal and in support of his previous motion for summary judgment and sanctions (Items 149 and 150). Mr. Moot pointed out, once again, that plaintiffs had totally failed to comply with the procedural requirements of 28 U.S.C. § 144 in that no motion for recusal or supporting papers were ever filed. He also pointed out, correctly, that any such motion would be untimely, since a motion based upon similar grounds could have been made at an earlier time. *In Re International Business Machines Corp.,* 618 F.2d 923, 932 (2d Cir.1980).

Plaintiffs responded with yet another letter, again offering to prepare a motion for recusal. Counsel for plaintiffs stated that the circumstances in the case at bar "which we have touched on—and which can be amplified and specifically detailed in affidavits—are compelling reasons for recusal." (Letter of March 17, 1986, Item 161). Plaintiffs made no further filings. As has been noted, after the resolution of the state court proceedings in late June of 1986, defendants' motion for summary judgment and for sanctions was again submitted for decision.

There are two recusal statutes: 28 U.S.C. § 144 and 28 U.S.C. § 455. There are certain procedural requirements under section 144. The party requesting recusal must make a motion "supported by a written affidavit of facts supporting the claim of bias and a certificate of good faith from counsel of record." *Galella v. Onassis,* 487 F.2d 986, 997 (2d Cir.1973).

■ Counsel for plaintiffs has not complied with the rules under this section. Offers to make a formal motion conditioned upon an order or request from the court are insufficient. This is especially so in this case, in which opposing counsel repeatedly pointed out the deficiencies in plaintiffs' requests for recusal, and the court asked plaintiffs for a "definite answer" on the recusal issue. The procedural requirements of section 144 are clear from the statute and from the case law.

Despite many opportunities, counsel for plaintiff did not comply with them.

■ However, 28 U.S.C. 455 places a court under a continuing obligation to recuse itself *sua sponte* under certain circumstances. Under section 455(b) a judge must recuse himself if, *inter alia,* he has personal knowledge of the facts, has a financial interest in the outcome of the proceeding, or has served as a lawyer in the matter at issue. None of the grounds listed in section 455(b) is present in this case. Pursuant to section 455(a) recusal is necessary if a reasonable person would question the court's impartiality.

Under all the circumstances in this case, I do not find that a reasonable person would consider the court to be partial. Several years ago, one of my daughters who was attending college worked part-time for a brief period at the flower shop owned by plaintiff Fannye Markel. I met with counsel for defendants, counsel for plaintiffs, and plaintiff Fannye Markel to discuss this issue, and it was agreed by all that there was no basis for recusal.

Later, flowers for two of my daughters' weddings were purchased from Mrs. Markel's shop. No party made any motions for recusal. It was not until a third daughter married and arrangements were made in the fall of 1985 to purchase wedding flowers from Mrs. Markel's shop that counsel for plaintiff raised the issue. The purchase of wedding flowers from Fannye Markel's shop has no relationship to the issues in the instant action. It is unlikely that a reasonable person would view the court as partial when, earlier in the case, plaintiffs were denied preliminary relief, defendants obtained a preliminary injunction and, by this order, defendants will be granted summary judgment, to which they are clearly entitled. There are no grounds for *sua sponte* recusal under section 455.

*Summary Judgment*

In April of 1984, plaintiffs were ordered to "review carefully the causes of action set forth in their latest complaint and drop those which no longer have bearing on the issues now present." (Item 140.) Plain-

tiffs accordingly filed a second amended complaint (Item 142).

In their motion for summary judgment, defendants urge that plaintiffs fail to allege, and the evidence adduced through extensive discovery fails to show, that there was any conspiracy by defendants to violate either the antitrust laws or the securities statutes. They also maintain that there is no evidence to support plaintiffs' claims under the Securities Exchange Act or the Antitrust Act, and that the undisputed material facts entitle them to judgment as a matter of law.

After defendants filed their motion for summary judgment and sanctions, the court requested a response from plaintiffs. The only response received from plaintiffs was an affidavit from Fannye Markel (Item 147), which essentially mirrors the amended complaint (Item 142) and points to no evidence to raise a genuine issue of disputed, material fact. For the reasons below, defendants' motion for summary judgment is granted.

## A. *Securities*

■ Plaintiffs allege violations of sections 10(b), 14(e), 18(a), 20, and 27 of the Securities Exchange Act of 1934 and Rule 10b–5 thereunder.[3] (15 U.S.C. § 78a, *et seq.*)

In order to state a claim for relief under section 10(b) a plaintiff must allege that, in connection with the purchase or sale of securities, the defendant, acting with scienter, made a false material representation or omitted to disclose material information and that plaintiff's reliance on defendant's actions caused him injury. *Bloor v. Carro, et al.,* 754 F.2d 57, 61 (2d Cir.1985). Plaintiffs are required to prove all three elements to sustain a cause of action under Section 10(b) and Rule 10b–5. Other sections of the Act raised by plaintiffs also require reliance by the selling shareholders.

Section 14 applies to all proxy solicitations, whether or not in connection with a purchase or sale. *SEC v. National Securities Inc.,* 393 U.S. 453, 468, 89 S.Ct. 564, 572, 21 L.Ed.2d 668 (1969). To prevail under § 14(e), plaintiffs must show that, in connection with a tender offer, there was a misrepresentation (or omission) on which the target shareholders relied. *Lewis v. McGraw,* 619 F.2d 192, 195 (2d Cir.1980), *cert. denied,* 449 U.S. 951, 101 S.Ct. 354, 66 L.Ed.2d 214 (1980). These requirements track those of § 10(b) and Rule 10(b)(5). Section 18(a) of the Act also requires reliance by the selling shareholders as would, based on the nature of plaintiff's claims, section 20 of the Act.

■ Defendants urge that plaintiffs have shown none of the requisite elements. I find that plaintiffs have failed to adduce evidence of reliance by the selling shareholders on any alleged misrepresentations or omissions. In light of this finding, there is no need to determine whether defendants actually misrepresented any material facts or made material omissions since, even if they had, the selling shareholders did not rely on them in making the decision to sell.

It is clear that neither Mrs. Markel nor other non-selling shareholders could have relied on any misrepresentations or omissions by defendants. They never sold their shares to Scovill. Nor could Markel Heater Corporation have so relied (assuming it has standing), since it was formed after the purchase agreement was signed. Mrs. Markel's claim is essentially that the selling shareholders were defrauded by Scovill and the named defendants, including former Markel Electric officers. This would place her and the other non-selling shareholders in the position of "forced sellers." Their only option, in effect, was to sell to Scovill or to pursue their right to an appraisal proceeding in state court, as they eventually did (*see generally, Vine v. Beneficial Finance Co.,* 374 F.2d 627 (2d Cir. 1967), *cert. denied,* 389 U.S. 970, 88 S.Ct. 463, 19 L.Ed.2d 460 (1967) and *Mayer v. Oil*

---

**3.** Since Markel Heater Corporation is neither a seller nor a purchaser, it has no standing to sue under section 10(b) or Rule 10(b)–5 of the Securities Act. *Blue Chip Stamps, et al. v. Manor Drug Stores,* 421 U.S. 723, 95 S.Ct. 1917, 44 L.Ed.2d 539 (1975).

*Field Systems Corp.,* 721 F.2d 59, 65 (2d Cir.1983)).[4]

Plaintiffs allege that the defendants made material misrepresentations of fact. Particularly, plaintiffs claim that defendants made several misrepresentations in the March 1978 tender offer (*see* second amended complaint, Item #142, especially ¶ 5P). In their response to the motion for summary judgment, plaintiffs cite no evidence in the record in support of their claims that material misrepresentations were made to the selling shareholders. Nor have plaintiffs pointed to evidence to show that any selling shareholders relied on any alleged representations that Morris Markel could not obtain financing to buy their stock (Item 142, ¶ 5H). Furthermore, even if there were misrepresentations, plaintiffs who bear the burden of proof on this point, point to no evidence to show that any selling shareholders relied on them.

The crux of plaintiffs' complaint seems to be that defendants misstated the value of the company by omitting certain assets from the recorded book value of Markel Electric and by hiding a capital surplus and excess cash (Item 142, ¶ 2, I and J).[5] These omissions, plaintiffs claim, resulted in the selling shareholders agreeing to sell their shares for substantially less than their value. Plaintiffs also allege that defendants withheld the "usual limited and non-confidential financial data of Markel Electric" from plaintiffs and Morris Markel (Item 142, ¶ 2E).[6]

 In cases of alleged misrepresentations, plaintiffs must establish reliance. However, when an omission is at issue, the burden of proving reliance is removed from plaintiffs. *Affiliated Ute Citizens v. Unit-*

ed *States,* 406 U.S. 128, 153–154, 92 S.Ct. 1456, 1472, 31 L.Ed.2d 741 (1972). An omission of material fact, in and of itself, has been held sufficient to establish the requisite element of reliance or causation. *Id.* at 154, 92 S.Ct. at 1472.

*Ute,* however, created only a presumption of reliance in the case of omissions. Defendant may rebut this presumption by affirmative proof of non-reliance. "If defendant can prove that plaintiff's decision would not have been affected even if defendant had disclosed the omitted facts, then plaintiff's recovery is barred." *Rifkin v. Crow,* 574 F.2d 256, 262 (5th Cir. 1978) (Rule 10b–5). *See also Schwarz v. Folloder,* 767 F.2d 125, 132 n. 10 (5th Cir. 1985). "We therefore presume reliance only 'where it is logical' to do so." *Lewis v. McGraw,* 619 F.2d at 195 (cite omitted). (Referring to § 14(e)).

In this case, defendants have offered strong proof that no alleged omission caused the shareholders to decide to sell their stock. The selling shareholders submitted an affidavit to this court stating that they had read the complaint and were fully familiar with its allegations. Each stated, in similar language:

I wish to state to the Court that I am satisfied with the terms of the sale of my stock to Scovill Manufacturing Company and I have no desire to change or cancel my sale, and I am satisfied with the entire transaction which I consider to be fair in all respects. Furthermore, after having read the complaint in the above-captioned matter, I do not wish to be included in any class of plaintiffs which

---

**4.** If Mrs. Markel and the other, non-selling shareholders were not "forced sellers" under *Vine, supra,* they would have no standing to sue under section 10(b), since they neither sold nor purchased shares. *Blue Chip, supra.*

**5.** Defendants dispute the contention that any assets were hidden from the shareholders. According to defendants, the asset tally depends upon the method of accounting selected by the firm. They urge that, since the methods of accounting were described in the financial statements, there was no misrepresentation.

However, since the court finds no reliance by the selling shareholders, there is no need to reach the issue of whether any material misrepresentations or omissions were made.

**6.** The court notes that, as a highly placed officer in the company, Morris Markel had access to company records. In response to the motion for summary judgment, plaintiffs have pointed to no evidence that any financial statements were kept from Morris Markel. Furthermore, such records were "non-confidential." As I found in my June 2, 1978, order, no selling shareholder requested the financial statements.

counsel for the plaintiff purports to represent.

Affidavit of Betty Markel Jacobson. Sworn to May 31, 1978 (Item 16, ¶ 3).

The shareholders, of course, had read the original complaint and not the second amended complaint. The original complaint also contained allegations that the book value of Markel Electric was substantially below its actual value because certain assets were unrecorded (Item 1, ¶ 18 and Item 3, ¶ 16(E)). It also alleged that defendants wrongfully withheld "financial data or statements" (Item 1, ¶ 20S; Item 3, ¶ 19(K)), and that defendants misrepresented Morris Markel's ability to purchase and operate the business (Item 1, ¶ 20Q; and, *generally,* Item 3, ¶ 19(F)).

With all these allegations in mind, the selling shareholders swore, less than two months after signing the agreement and 10 days after the purchase closed, that they had no wish to change or cancel their sales. Throughout this long litigation, no selling shareholder has sought to intervene or in any way supported plaintiffs' cause. This is sufficient to rebut any presumption of reliance. Despite opportunity for extensive discovery, plaintiffs can point to no evidence to indicate otherwise. Because plaintiffs cannot show the requisite reliance, the court need not consider whether plaintiffs have presented facts to support an inference of an intent to deceive, manipulate or defraud. *Wechsler v. Steinberg,* 733 F.2d 1054, 1059 (2d Cir.1984).

Summary judgment is granted to defendants on plaintiffs' cause of action under the Securities Exchange Act.

### B. *Antitrust*

Plaintiffs have also alleged violations of the Sherman Act, § 1 and § 2, and the Clayton Act, § 7. In their amended complaint, plaintiffs claimed that all defendants entered into a conspiracy to enable defendant Scovill to monopolize and restrain business in various parts of the United States, to the exclusion of plaintiffs, Morris Markel, Markel Electric and Markel Heater (Item 142, ¶ 4H). They also urged, in the amended complaint, that Scovill sought to acquire a market for its Nutone Division and sought to eliminate Markel Heater and Markel Electric as part of this goal (Item 142, p. 19).

■ Since both Scovill and Markel Electric sell electric heaters, the acquisition of Markel by Scovill was a horizontal merger. More than simple elimination of competition between the two merged firms must be shown:

An economic arrangement between companies performing similar functions in the production of sale comparable goods or services is characterized as "horizontal." The effect on competition of such an arrangement depends, of course, upon its character and scope. Thus, its validity in the face of the antitrust laws will depend upon such factors as: the relative size and number of the parties to the arrangement; whether it allocates shares of the market among the parties; whether it fixes prices at which the parties will sell their product; or whether it absorbs or insulates competitors. Where the arrangement effects a horizontal merger between companies occupying the same product and geographic market, whatever competition previously may have existed in that market between the parties to the merger is eliminated. Section 7 of the Clayton Act, prior to its amendment, focused upon this aspect of horizontal combinations by prescribing acquisitions which might result in a lessening of competition between the acquiring and the acquired companies. The 1950 amendments made plain Congress' intent that the validity of such combinations was to be gauged on a broader scale: their effect on competition generally in an economically significant market.

*Brown Shoe Co. v. United States,* 370 U.S. 294, 334–35, 82 S.Ct. 1502, 1529, 8 L.Ed.2d 510 (1962). In order to assess the effect on competition generally, a court must consider the product market, the geographic market and the probable effect on competition. *Id.* at 336–339, 82 S.Ct. at 1529–1532.

■ In response to defendants' motion for summary judgment, plaintiffs point to

no evidence to indicate that Scovill's acquisition of Markel Electric Company substantially reduced competition in the market for electric heaters either locally or throughout the country, in violation of the Clayton Act. Nor do plaintiffs refer to any evidence indicating that defendants conduct tended to create a monopoly under the Sherman Act. In fact, according to Fannye Markel's affidavit, Markel Heater Company continues to operate locally, while Scovill has discontinued its Markel Electric operations in Buffalo (Item 147, ¶ 10). In that affidavit, plaintiffs simply repeat their allegations of anticompetitive effect.

Plaintiffs have also failed, in response to defendants' motion for summary judgment, to come forward with any evidence to indicate that defendants conspired to violate the antitrust laws. In her affidavit in opposition to defendants' summary judgment motion, Fannye Markel stated:

> No reason or motive can be ascribed to defendants' refusal to accept a higher cash offer from plaintiffs than from Scovill [or to] defendants wrongful interference with plaintiffs' financing, excepting only an improper refusal to deal with plaintiffs in order to restrain trade....

(Item 147, ¶ 12).

Again, however, plaintiffs point to no evidence to support this inference. There may have been many reasons why defendants chose to sell to Scovill despite the fact that plaintiffs might have made a better offer. David Markel, former president of Markel Electric Products, has stated that the sale to Scovill was consummated with an eye towards preserving the jobs of 500 workers (Item 7, ¶ 8).

In defending against a motion for summary judgment, plaintiffs must do more than merely assert that defendants entered a conspiracy to violate the antitrust laws. Plaintiffs must come forward with evidence to support the inferences they seek to draw from the facts in the record. Plaintiffs have failed to do so, although extensive discovery has been completed. Summary judgment is granted to defendants on plaintiffs' antitrust count.

### C. *Common Law Claims*

In the third count of their second amended complaint, plaintiffs raise a myriad of common law tort claims. Since the federal claims have been dismissed, the court must, in its discretion, determine whether jurisdiction should be maintained over plaintiffs' pendent claims. *Mayer v. Oil Field Systems Corp.*, 803 F.2d 749 (2d Cir. 1986).[7]

"Certainly, if the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well." *United Mine Workers v. Gibbs*, 383 U.S. 715, 726, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966). If the federal claims are unsubstantial or meritless, a court should not retain jurisdiction over the state law claims. *Dunton v. County of Suffolk*, 729 F.2d 903, 910 (2d Cir.1984).

In this action, any common law claims arose out of the same common nucleus of operative facts as did the federal claims. However, judicial economy, convenience and fairness to the litigants would not be furthered by this court maintaining jurisdiction. *Gibbs*, 383 U.S. at 726, 86 S.Ct. at 1139. This is not a case which would be tried piecemeal if the state law claims were dismissed. The federal claims have been dismissed on the merits, and the common law claims are all that remain.[8]

---

7. The court notes that plaintiffs raise diversity of citizenship as a ground for jurisdiction in their amended complaint. As a general rule, complete diversity must exist at the time the complaint is filed. *Mas v. Perry*, 489 F.2d 1396, 1399 (5th Cir.1974), *cert. denied*, 419 U.S. 842, 95 S.Ct. 74, 42 L.Ed.2d 70. Four of the individual defendants, David Markel, Lester M. Markel, Robert H. Jacobson, and F.E. Warner resided in New York State when the complaint was filed. Since plaintiffs resided in the district and Mark-

el Heater is a New York State corporation, there is not complete diversity, and so no diversity jurisdiction.

8. In addition, it appears that plaintiffs would not be prejudiced if their state claims were dismissed. Because their common law claims are not being terminated by voluntary dismissal, failure to prosecute, or judgment on the merits, plaintiffs may sue in state court within six months of the date of this decision. N.Y.Civ.

Finally, there is no unfairness to plaintiffs in dismissing their common law claims listed under their third count. The emphasis in this action has been on plaintiffs' causes of action under federal law, particularly the Securities Exchange Act of 1934. The third count of plaintiffs' amended complaint is broad-ranging and imprecise, and plaintiffs make no attempt to set out the relevant legal standards and point to disputed issues of material fact in response to defendants' motion for summary judgment.[9]

The third count of plaintiffs' amended complaint, asserting common law claims, is dismissed.

### Defendants' Motion for Sanctions

Defendants have also moved for attorney fees pursuant to Rule 11 of the Federal Rules of Civil Procedure. Sanctions must be imposed against an attorney and/or his client when a pleading, motion, or other paper has been interposed for an improper purpose. Sanctions must also be levied when, after reasonable inquiry, a competent attorney could not form a reasonable belief that the pleading is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law. *Eastway Construction Corp. v. City of New York*, 762 F.2d 243, 254 (2d Cir.1985).

 Keeping in mind the professional and economic impact an award of sanctions may have upon an attorney, courts must take care to ensure that due process is afforded to an attorney and/or party facing sanctions. *Oliveri v. Thompson*, 803 F.2d 1265, 1280 (2d Cir.1986). The advisory notes to Rule 11 point out that the time when Rule 11 sanctions are to be imposed and the format to be followed is in the discretion of the district court judge. It cautions, however, that the procedure invoked must comport with due process.

"This does not mean, necessarily, that an evidentiary hearing must be held. At a minimum, however, notice and an opportunity to be heard is required." *Oliveri*, 803 F.2d at 1280.

Plaintiffs and their attorney were given more than adequate notice that defendants sought Rule 11 sanctions, including attorney fees. After plaintiffs filed their amended complaint (Item 142), defendants moved for summary judgment, dismissal, and sanctions (Item 143). The motion cited Rule 11 in the paragraph requesting sanctions. It was accompanied by a memorandum of law, part of which was devoted to a discussion of the legal authority for imposing Rule 11 sanctions (Item 144, pp. 11–14).

After this court directed plaintiffs to respond to defendants' motion, Mrs. Markel's affidavit was filed (Item 147). Her affidavit generally opposed defendants' motion for summary judgment, dismissal, and sanctions, but made no explicit reference to the issue of sanctions or to Rule 11. No accompanying brief was filed.

After counsel for plaintiffs raised the issue of recusal in letter form, Richard Moot filed a declaration in opposition to recusal and in further support of defendants' outstanding motion for summary judgment, dismissal, and sanctions (Item 149). That declaration again cited Rule 11 and was accompanied by a brief in opposition, which directed plaintiffs and their counsel to *Eastway Construction Corp. v. City of New York*, 762 F.2d 243 (2d Cir. 1985) (Item 150). Two further declarations were filed by Mr. Moot, both seeking sanctions (Items 151 and 153).

In view of this history, I am satisfied that plaintiffs and their counsel had adequate notice that Rule 11 sanctions might be imposed and that they had ample opportunity to be heard on the issue. A hearing would do nothing more than cause further

---

Prac.Law § 205(a), *Dunton*, 729 F.2d at 911. Plaintiffs may make use of the discovery in this case in state court. (This assumes, of course, that there is no *res judicata* effect flowing from plaintiffs' prior appraisal action in state court.)

**9.** In dismissing plaintiffs' common law claims, the court also takes into account the New York

State Supreme Court Judge's findings in the appraisal proceeding. He found that the negotiations for the company were conducted at arm's length and that the sales price was fair (*see* attachment to Item 152, copy of state court order, pp. 5–6).

needless delay. Plaintiffs and their counsel have been afforded due process.

■■■■ Defendants argue that this action was baseless when filed and that plaintiffs have repeatedly caused delays throughout this litigation. However, at the time this suit was filed, a competent attorney could have reasonably believed that it was well founded factually and legally. Rule 11 sanctions must not be used in a way which would chill creativity or prevent the bringing of claims which appear colorable at the outset of litigation. *See East-way*, 762 F.2d at 254, and *Oliveri*, 803 F.2d at 1275. I also find that the action was not brought for any improper purpose.

However, there came a point in this action in which plaintiffs' continuance of the action was unjustified. *Lane v. Sotheby Parke*, 758 F.2d 71, 73 (2d Cir.1985); *see also Christianburg Garment Co. v. EEOC*, 434 U.S. 412, 421–22, 98 S.Ct. 694, 700–01, 54 L.Ed.2d 648 (1978). From June of 1980, when Morris Markel and the Morris Markel Trust settled with defendants, until December of 1983, there was only sporadic activity in this case. On December 1, 1983, I issued an order to show cause why the action should not be dismissed for failure to prosecute (Item 136). Counsel for plaintiff filed an opposing affidavit advising that discovery was completed (Item 137), and plaintiffs were permitted to continue the action.

On April 6, 1984, plaintiffs were directed to carefully review the causes of action in their latest amended complaint and drop those which no longer had any bearing on the case. Plaintiffs were given an opportunity to file another amended complaint, and did so on July 6, 1984 (Item 142). The second amended complaint was signed by Arnold Weiss, counsel for plaintiffs (Item 142).

Defendants then filed the motion for summary judgment and sanctions. As was noted, plaintiffs' response in opposition to

the motion was an affidavit from plaintiff Fannye Markel (Item 142). There was no accompanying brief or citation to legal authority. Mrs. Markel's affidavit repeated the allegations in the amended complaint. Although discovery had been completed, plaintiffs pointed to no specific evidence in support of their claims.

I find that, in filing the amended complaint on July 6, 1984, and the affidavit in opposition to the motion for summary judgment on November 7, 1984, plaintiffs and their counsel violated Rule 11. When the amended complaint was filed, the litigation had been going on for six years. Discovery was completed. The court ordered plaintiffs to carefully review and revise their complaint. It is clear that, at the time the amended complaint was filed, it was not well grounded in fact and/or law. It served to protract what had become a meritless action.

■■■■ Furthermore, plaintiff Fannye Markel's affidavit opposing summary judgment was patently insufficient for the reasons discussed above. In addition, the court notes that Mrs. Markel's affidavit was signed only by her, with no covering affidavit or statement signed by her attorney. This omission is in itself a violation of Rule 11, which provides that "[e]very pleading, motion, and other paper of a party represented by an attorney shall be signed" by the attorney. *Oliveri*, 803 F.2d at 1274.

■■■■ As a result of plaintiffs and their counsel filing the second amended complaint and an affidavit in opposition to defendants' motion for summary judgment, all in violation of Rule 11, this action was needlessly protracted. Defendants are awarded attorney fees and expenses from the date the second amended complaint was filed, July 6, 1984, through the date of this order. *See generally, Bartel Dental Books Co. v. Schultz*, 786 F.2d 486, 490 (2d Cir.1986).[10]

---

**10.** Since plaintiffs became liable for defendants' attorney fees and expenses as of July 6, 1984, there is no need to review each docket entry individually. Nonetheless, the court notes that plaintiffs' counsel sent several letters addressing the issue of recusal. It is clear from its language that Rule 11 applies to more than pleadings. The court has not found any authority, however, as to whether letters constitute "other papers" within the scope of the rule. The term

Counsel for defendants shall file an appropriate affidavit setting forth hours, rates, and expenses on or before May 5, 1987. Both plaintiffs and counsel shall be permitted to file objections, which shall be accomplished on or before May 26, 1987. In addition to setting the amount, it must also be determined whether plaintiffs, their counsel, or both shall pay the sanction. Rule 11 provides that either the attorney and/or the client shall be responsible for sanctions. In this case, it would clearly be inappropriate to place the entire burden on plaintiff Fannye Markel, since legal knowledge was involved. What percentage should be allocated to plaintiffs, if any, must be determined. This case is referred to United States Magistrate Edmund F. Maxwell for his report and recommendations on these issues, pursuant to 28 U.S.C. § 636.

Finally, plaintiffs request that the preliminary injunction issued June 25, 1979 (471 F.Supp. 1244) be rescinded (Item 147, ¶ 20). That injunction, in brief, restrained plaintiffs from using the word "Markel" (or even the initials "MH") as any part of a trademark or service mark pending resolution of this action. Since defendant Scovill has, according to plaintiffs, discontinued Markel Electric's operations in Buffalo, the court sees no reason for making the injunction permanent, nor have defendants requested that it do so. Unless objections are heard from defendants on or before May 5, 1987, the preliminary injunction shall be deemed vacated.

Defendants' motion for summary judgment is granted on plaintiffs' causes of action in federal law. Plaintiffs' common law claims are dismissed. Defendants' motion for attorney fees is granted solely for the period beginning July 6, 1984, to the date of this order, consistent with the above. The assessment and apportionment

of fees is referred to United States Magistrate Edmund F. Maxwell for his report and recommendation, pursuant to 28 U.S.C. § 636. The preliminary injunction issued June 25, 1979, shall be deemed vacated unless objection is heard on or before May 5, 1987.

So ordered.

"other papers" in its companion context of Rule 7 includes "affidavits, depositions, written notices, appearances, demands offers and the like." *Moore's Federal Practice*, Vol. 2A, pp. 7–21 (1984). In this case, counsel for plaintiffs had ample notice and opportunity to file an appropriate motion. And, in fact, his letters were effectively treated as a motion by defendants. Counsel for plaintiffs cannot avoid the

requirements of Rule 11 by filing letters. Under the circumstances of this case, the letters signed by counsel for plaintiffs constituted "other papers" within Rule 11. In light of the untimely nature of the request and counsel's failure to make a formal motion despite repeated warning, I find that the letters were interposed for the purpose of delay, in violation of Rule 11.