Norman **SALSITZ**, on behalf of all others similarly situated, **Plaintiff,**

v.

Nelson **PELTZ**, Peter W. May, and Triarc Companies, Inc., **Defendants.**

No. 99 CIV.2202 (LTS)(MHD).

United States District Court,
S.D. New York.

Oct. 17, 2002.

**OPINION AND ORDER**

SWAIN, District Judge.

Plaintiff Norman Salsitz ("Plaintiff") brings this putative class action against de-

fendants Nelson Peltz ("Peltz"), Peter W. May ("May") and Triarc Companies, Inc. ("Triarc" or the "Company") (collectively, "Defendants"), alleging violations of Section 14(e) of the Securities Exchange Act of 1934 ("Section 14(e)"), 15 U.S.C. §§ 78t, 78n(e), in connection with Triarc's March 1999 "Dutch Auction" self-tender solicitation. Plaintiff moves for certification pursuant to Rule 23 of the Federal Rules of Civil Procedure of a class consisting of all persons or entities "who held stock in Triarc as of March 10, 1999 and who suffered damages thereby" (the "Class")[1].

## BACKGROUND

On October 12, 1998, Defendants Peltz, the Chairman and Chief Executive Officer of Triarc, and May, the President and Chief Operating Officer of Triarc, who at the time owned (collectively) approximately 26% of Triarc's stock, offered to purchase all of the then outstanding shares of Triarc Class A and Class B common stock from the public for $18.00 per share. Triarc formed a special committee of its Board of Directors ("Special Committee") to evaluate this proposal (the "Going Private Offer"). On March 10, 1999, approximately five months later, Peltz and May withdrew their Going Private Offer, stating "we believe it is not in the best interests of the shareholders at this time." (Compl.¶ 36). On that same day, Triarc announced that it would commence a Dutch auction self-tender proceeding ("Dutch Auction") to acquire up to 5.5 million shares of Triarc Class A and Class B common stock from the public at a price between $16.25 and $18.25 per share.

Thereafter, on March 23, 1999, Plaintiff filed this action alleging that the Company's proxy materials in connection with the Dutch Auction were materially misleading and, therefore, violative of Section 14(e) of the Exchange Act. Plaintiff claims that (i) the proxy materials failed to make any meaningful disclosure as to the reasons why the

---

1. Defendants and any controlling or controlled person of any such person or entities are exclud- ed from Plaintiff's class definition.

Going Private Offer was aborted (Compl.¶¶ 44, 45); (ii) the proxy materials failed adequately to disclose "any valuation or study that [had] been made with respect to the dutch auction" and the abandoned Going Private Offer, including any valuations conducted by defendants and by Wasserstein Perella (which advised May and Peltz in connection with the Going Private Offer and subsequently advised the Company in connection with the Dutch Auction) (*id.* at ¶ 48); (iii) the proxy materials failed to disclose the compensation received by Wasserstein Perella in connection with the Going Private Offer (*id.* at ¶ 49); (iv) the proxy materials, which disclosed that the board of directors ("Board") had unanimously approved the Dutch Auction, failed to identify any reasons or rationale for voting in favor of an offer between $16.25 and $18.25 "when it had already been determined that an $18.00 per share price was unfair" (*id.* at ¶ 47); (v) the proxy materials failed to disclose that Peltz and May would be the "ultimate beneficiaries" of the Dutch Auction (*id.* at ¶ 40, 41); (vi) the proxy materials failed to disclose that "Wasserstein Perella suffered from a disabling conflict," having represented Peltz and May individually in the Going Private Offer and Triarc with respect to the Dutch Auction (*id.* at ¶ 50); and (vii) statements in the proxy materials that "the Board of Directors of the Company has unanimously approved the offer" and that "neither the Company nor its Board of Directors make any recommendation to any stockholder as to whether to tender all or any of his or her shares" create a misrepresentation as to whether the Board of Directors favored the Dutch Auction. (*id.* at ¶ 46).

*DISCUSSION*

*MOTION FOR CLASS CERTIFICATION*

Plaintiff seeks certification of a class consisting of all persons or entities who held stock in Triarc as of March 10, 1999 and who suffered damages. Compl. ¶ 25. Plaintiff contends that this action is appropriate for class certification because the members of the proposed class of Triarc shareholders number in the thousands and the wrongs complained of arise from the same course of conduct by Defendants. Plaintiff asserts that his claims are typical of the claims of the proposed class and that he has demonstrated his adequacy by selecting counsel experienced in the prosecution of complex securities class actions. Defendants assert that Plaintiff does not satisfy the requirements of Rule 23 and, invoking Article III of the United States Constitution's "case or controversy" limitation, argue that Plaintiff cannot represent a class of Triarc shareholders because he did not suffer an individual injury as a result of the conduct at issue and, therefore, lacks standing to assert the claims in the Complaint.

"[C]lass certification issues are ... 'logically antecedent' to Article III concerns ... and pertain to statutory standing, which may properly be treated before Article III standing." *Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 831, 119 S.Ct. 2295, 144 L.Ed.2d 715 (1999); *Stevelman v. Alias Research Inc.*, No. 5:91 Civ. 682, 2000 WL 888385, at *6 (D.Conn. June 22, 2000). Rule 23's requirements "should be treated first, 'mindful that [the Rule's] requirements must be interpreted in keeping with Article III constraints ....'" *Stevelman*, 2000 WL 888385, at *6 (quoting *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 612–13, 117 S.Ct. 2231, 138 L.Ed.2d 689 (1997)).

*Rule 23(a)*

Under Rule 23, one or more of the members of a class may bring suit on behalf of all other class members only if "(1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class." Fed.R.Civ.P. 23(a). " 'Rule 23 is given liberal rather than restrictive construction, and courts are to adopt a standard of flexibility.' " *Marisol A. v. Giuliani*, 126 F.3d 372, 377 (2d Cir.1997) (citation omitted). Plaintiff bears the burden of establishing satisfaction of the requirements for class certification. *Medicare Beneficiaries' Defense Fund v. Empire Blue Cross Blue Shield*, 938 F.Supp. 1131, 1139 (E.D.N.Y.1996). Defen-

dants argue that Plaintiff fails to meet Rule 23's requirements of typicality and adequacy.

*Typicality*

■ The economic gravamen of Plaintiff's Section 14(e) claim is that the Dutch Auction underpriced the Company's stock. Defendants assert that, because Plaintiff did not tender his stock in the Dutch Auction, Plaintiff did not rely on any of the alleged misrepresentations or omissions and did not suffer financial loss and that, therefore, his claims are based on fundamentally different legal theories from the claims of shareholders who did tender their stock. Plaintiff asserts that he and other members of the Class were injured when they were "forced to decide" whether to tender their stock in the Dutch Auction without all material information and that, thus, his claims are typical of the Class. Pl.'s Mem. at 11.

Typicality is satisfied "if the claims of the named plaintiff[ ] arise from the same practice or course of conduct that gives rise to the claims of the proposed class members." *Marisol A. v. Giuliani,* 929 F.Supp. 662, 691 (S.D.N.Y.1996). Each class member's claim must "arise[ ] from the same course of events, and each class member [must] make[ ] similar legal arguments to prove the defendant's liability." *In re Drexel Burnham Lambert Group, Inc.,* 960 F.2d 285, 291 (2d Cir.1992).

Typicality refers to the nature of the claims of the class, and not to the specific facts from which the claims arose or relief is sought. Here, the central claims of the named plaintiff and the proposed class members do not arise from the same allegedly unlawful activity and the same legal theory. Plaintiff's claims as set forth in the Complaint are not "typical" of the target shareholder and do not stem from the same alleged events and the same legal theory. Plaintiff's position was not typical of those who could, on account of an artificially low price, claim injury because he did not tender his shares at an artificially low price. Indeed, Plaintiff cannot allege that he was induced to tender his shares at an artificially low price. Plaintiff's primary focus on the notion that all members of the Class, whether or not they tendered, were injured be-

cause they were forced to decide whether to sell their shares at an artificially low price without material information is atypical.

As to the question of reliance, this Court is sensitive to the fact that Rule 23 does not grant a court authority to inquire into the merits of a suit in order to determine whether it may be maintained as a class action. *Eisen v. Carlisle & Jacquelin,* 417 U.S. 156, 177, 94 S.Ct. 2140, 40 L.Ed.2d 732 (1974); *Dura–Bilt Corp. v. Chase Manhattan Corp.,* 89 F.R.D. 87, 94 (S.D.N.Y.1981); *Walsh v. Northrop Grumman Corp.,* 162 F.R.D. 440, 447 (E.D.N.Y.1995). Defendants' reliance argument is premised on the principle that, in order to maintain a Section 14(e) claim, Plaintiff must first establish that he detrimentally relied on the misrepresentations and omissions. The Courts find reliance "where it is logical" to do so, *Lewis v. McGraw,* 619 F.2d 192, 195 (2d Cir.1980), *quoting Chris–Craft Industries, Inc. v. Piper Aircraft Corp.,* 480 F.2d 341, 375 (2d Cir.), *cert. denied,* 414 U.S. 910, 94 S.Ct. 231, 38 L.Ed.2d 148 (1973), and look to the " 'precise goals' of the Williams Act, which were to insure that the 'target shareholder,' i.e. 'the person who is required to make a decision,' receives adequate disclosure." *Sedighim v. Donaldson, Lufkin, & Jenrette, Inc.,* 167 F.Supp.2d 639, 651 (S.D.N.Y.2001), *quoting Piper v. Chris–Craft Indus., Inc.,* 430 U.S. 1, 36 n. 23, 97 S.Ct. 926, 51 L.Ed.2d 124 (1977). Here, it is not logical to presume such reliance, as Plaintiff himself admits that the did not rely on the allegedly misleading tender offer materials. Salsitz Dep. at 55, 76–78, 80–82, 86–89, at Def.'s Memo. of Law in Opp'n to Class Cert.

Plaintiff's Section 14(e) claim thus is subject to unique defenses. Plaintiff is not a "typical" target shareholder and Plaintiff's claims are "subject to unique defenses which threaten to become the focus of the litigation." *Gary Plastic Packaging Corp. v. Merrill Lynch,* 903 F.2d 176, 180 (2d Cir.1990).

*Adequacy*

■ Plaintiff also fails to satisfy the "adequacy" prong of Rule 23(a)(4). Courts have held that in order to satisfy this requirement, the named plaintiff must not have interests

antagonistic to those of the class members and that the plaintiff's attorney must be qualified, experienced and generally able to conduct the proposed litigation. *Walsh,* 162 F.R.D. at 447. Defendants argue that there is a conflict between shareholders that tendered and those that did not, and assert that shareholders, like Plaintiff, who did not tender, would have benefitted by virtue of Triarc's repurchase of stock from other shareholders at a bargain price.

Here, there is no overriding common interest between shareholders who tendered and those, like Plaintiff, who did not. Shareholders who tendered have an interest in demonstrating that the tender offer materials misleadingly understated the value of Triarc's stock. Shareholders like Plaintiff, on the other hand, who did not tender, have the oppositive logical incentive. For this reason, tendering and non-tendering shareholders might also have a conflict regarding the pursuit of remedies in this action. Rescission and damages remedies for tendering shareholders would be detrimental to those who, like Plaintiff, saw the value of their equity in the Company increase after the Dutch Auction. Thus, the Court finds that Plaintiff is not an adequate Class representative.

Plaintiff's motion for class certification is therefore denied on typicality and adequacy grounds.[2] As Rule 23(a) has not been satisfied, the Court need not address Rule 23(b).

*Article III*

Finally, the Court also finds that Plaintiff's motion for class certification does not meet the standing requirements of Article III's "case or controversy" limitation.

■■■ The standing analysis in the context of a class action looks to the status of the named plaintiff, not the standing of unidentified class members. A named plaintiff may only represent absent class members if he personally has standing to litigate his own claim. *See, e.g., Simon v. Eastern Ky. Welfare Rights Org.,* 426 U.S. 26, 40 n. 20, 96 S.Ct. 1917, 48 L.Ed.2d 450 (1976) ("That a suit may be a class action ... adds nothing

to the question of standing, for even named plaintiffs who represent a class 'must allege and show that they personally have been injured, not that injury has been suffered by other, unidentified members of the class to which they belong and which they purport to represent.'") (quoting *Warth v. Seldin,* 422 U.S. 490, 502, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975)). In order to have standing to sue, a plaintiff must suffer an actual or threatened injury, thereby satisfying the "case or controversy" requirement of Article III. *Jaghory v. New York State Dept. of Educ.,* 131 F.3d 326, 329 (2d Cir.1997). Such injury must be "distinct and palpable," as opposed to abstract. *Id.* at 330. "The party seeking to invoke the jurisdiction of the court bears the burden of establishing that he has met the requirements of standing." *Id.* at 329.

■■■ Plaintiff asserts that the he was injured when he was "forced to decide" whether to tender his stock. However, as noted, Plaintiff has admitted that he did not rely on any of the allegedly actionable misrepresentations in making this decision, and that he actually profited from his decision not to tender. Being "forced to decide" is not, standing alone, compensable injury. Plaintiff cannot show either injury-in-fact or any causal connection between the challenged conduct and any alleged injury. Plaintiff cannot establish individual standing, and he cannot therefore represent a class.

For the foregoing reasons, Plaintiff's motion for certification is denied.

SO ORDERED.

---

**2.** The remaining requirements of Rule 23(a), numerosity and commonality, are not challenged by

Defendant.